EXCHANGE NATIONAL BANK OF CHICAGO, Special Adm'r of the Estate of Regina Heagy, Deceased, Plaintiff-Appellee, v. AIR ILLINOIS, INC., Defendant-Appellant.

First District (1st Division)    No. 86—3530

Opinion filed March 8, 1988.

1082

Pretzel & Stouffer, Chartered, of Chicago (Michael J. Merlo, Robert Marc Chemers, and Michael G. Bruton, of counsel), for appellant.

Asher, Pavalon, Gittler & Greenfield, Ltd., of Chicago (Eugene I. Pavalon and Gary K. Laatsch, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

The present wrongful death action is one of several arising from the crash of Air Illinois, Inc. (defendant), flight 710, bound from Springfield to Carbondale, Illinois, on October 11, 1983.[1] Exchange National Bank of Chicago (plaintiff), special administrator of the estate of Regina Polk Heagy (decedent), a passenger on Flight 710, was awarded $1,500,000 on behalf of decedent's husband, Thomas Heagy, following a jury trial on the issue of damages. Defendant's motion for a new trial was denied, and it appeals, contending that the trial court committed numerous errors, including: (1) erroneously admitting and excluding certain evidence; (2) permitting plaintiff's attorney to make inappropriate arguments to the jury; (3) improperly instructing the jury; and (4) refusing to submit essential instructions to the jury. For the reasons outlined below, we affirm.

The evidence at trial disclosed that decedent was born on February 14, 1950, and received a college degree from Mills College in California. She subsequently entered a master's program at the University of Chicago, where her concentration was industrial relations. During that time, she became a union organizer at Local 743 of the International Brotherhood of Teamsters in Chicago, Illinois, and in 1979, was promoted within the organization to the position of business agent, in which decedent earned an annual salary, along with bonuses, of approximately $33,895. At the time of her death, decedent was involved in a retraining program for approximately 1,800 workers left unemployed by the bankruptcy of a large Chicago mail order house. In that regard, she was appointed in 1982 by Governor Thompson to the Employment Training Council for Illinois. Decedent was en route to a meeting of that council in Carbondale when she was killed in defendant's aircraft.

Aside from being dedicated to her work, decedent had a loving relationship with her husband, Thomas Heagy, whom she married in April 1980. The two enjoyed traveling and entertaining, and other

---

[1]In *Singh v. Air Illinois, Inc.* (1988), 165 Ill. App. 3d 923, filed by this court, we affirmed a $400,000 damage award to the estate of Dalbir Singh, a passenger on flight 710.

than her miscarriage in 1982, decedent was in good health and hoped to raise a family. Despite those plans, decedent intended to continue working beyond retirement age.

On appeal, defendant initially contends that the trial court erred in allowing testimony as to decedent's future earnings within Local 743 since such earnings are merely speculative and not reasonably certain to occur. Specifically, defendant challenges the testimony of Kenneth Hester, secretary-treasurer of Local 743 and member of the executive board, and Donald Peters, president of the organization, that had decedent lived, she would have become a trustee and ultimately president of Local 743, earning $69,133 and $200,000 per year, respectively.

Having reviewed the record, we conclude that there is competent evidence to establish with reasonable certainty that decedent would have become a trustee or president of the union and that her salary would have been comparable to those who currently hold such positions. Hester, whose testimony was based on extensive experience in the labor field, daily contact with decedent, and his knowledge that elderly board members and trustees would continually need to be replaced, stated unequivocally that decedent would have become a member of the executive board. Similarly, Peters was certain that decedent would advance, given the ages of existing board members and the need for female representation. In fact, Peters stated that he had intended to personally recommend decedent to fill an April 1984 vacancy in the council. He also testified that given decedent's youth, knowledge, and experience, she would have succeeded to his position as president of Local 743 within four to five years of the date of trial.

■ We acknowledge, as did our supreme court in *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, 133 N.E.2d 288, *cert. denied* (1956), 352 U.S. 833, 1 L. Ed. 2d 53, 77 S. Ct. 49, that testimony involving the occurrence of future acts or events regarding one's employment is somewhat "problematical," yet "it is the best that can be produced to establish earning capacity over a period of years." As the *Allendorf* court further noted, "[a] jury of twelve average citizens ordinarily can be depended on to assess damages fairly, after they have heard and considered such evidence." (8 Ill. 2d at 176-77, 133 N.E.2d at 294.) It was for this reason that the jury in *Allendorf* could properly consider that the decedent was "enterprising and industrious and had good prospects for advancement." (8 Ill. 2d at 180, 133 N.E.2d at 296.) Similarly, in the case at bar, no error was committed by the trial court in allowing the jury to hear testimony concerning decedent's prospects for increased future earnings and the

amount of those earnings.

*Christou v. Arlington Park-Washington Park Race Tracks Corp.* (1982), 104 Ill. App. 3d 257, 432 N.E.2d 920, relied on by defendant is factually distinguishable from the present case. In *Christou*, the court held that permitting the plaintiff's witness to testify about the average earnings of a restaurant owner constituted error where "[o]wning a restaurant was merely an ambition of plaintiff's which had never materialized." (104 Ill. App. 3d at 260, 432 N.E.2d at 923.) Here, however, the record discloses that decedent not only had an ambition to advance within Local 743, but more importantly, also had the ability and opportunity. The evidence produced at trial clearly indicated that decedent would have experienced job advancement and commensurate increases in pay had she lived.

■ Defendant next maintains that the trial court improperly admitted Kenneth Hester's testimony regarding the future benefits decedent would have received from union pension funds. Again, defendant argues that this testimony was speculative and not based on events reasonably certain to occur. This argument also must fail in light of *Raines v. New York Central R.R. Co.* (1972), 51 Ill. 2d 428, 283 N.E.2d 230, *cert. denied* (1973), 409 U.S. 983, 34 L. Ed. 2d 247, 93 S. Ct. 322, where our supreme court specifically held that a presently existing but contingent right to a pension is admissible to show damages for loss of future earnings, even where an employee has worked for only nine days prior to injury. Here, the evidence showed that decedent's entitlements were based on her continued employment with Local 743. As in *Raines*, there was testimony that decedent intended to continue working for her current employer, and accordingly, the jury was entitled to consider decedent's prospective pension rights.

■ Defendant further argues that the testimony of James Warren, a Chicago Tribune labor reporter, should have been barred due to plaintiff's noncompliance with Supreme Court Rule 220 (107 Ill. 2d R. 220), which directs disqualification of any expert who has not previously been disclosed. The record discloses, however, that Mr. Warren was not tendered as an expert but merely as a lay witness whose very brief testimony was confined to his observations as to the work performed by decedent and the manner in which she performed that work. Contrary to defendant's assertions, Mr. Warren was neither asked nor ventured an opinion about decedent's future in the labor movement. As a result, no violation of Supreme Court Rule 220 occurred.

■ Defendant additionally assigns error to the trial court's ad-

mission of a videotape into evidence which depicted decedent responding to a reporter's question about a job program in which she was involved. It is well established that videotape and photographs are admissible if their probative value is not outweighed by their inflammatory effect. (*Barenbrugge v. Rich* (1986), 141 Ill. App. 3d 1046, 490 N.E.2d 1368, *cert. denied* (1986), 112 Ill. 2d 570.) In wrongful death actions, such evidence is admissible to show the decedent's state of well-being prior to his death. (*Fedt v. Oak Lawn Lodge, Inc.* (1985), 132 Ill. App. 3d 1061, 478 N.E.2d 469; *Ross v. Pfeifer* (1976), 39 Ill. App. 3d 789, 350 N.E.2d 797.) Admission of photographic evidence is within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 478 N.E.2d 581.

■ In the present case, the trial court did not abuse its discretion in admitting the videotape of decedent. As defendant concedes, the segment in which decedent appears is "very brief," and no assertion was made that the tape did not accurately portray decedent prior to her death. Moreover, defendant's insistence that the tape was merely cumulative of other photographic evidence presented at trial is unpersuasive in light of *Barenbrugge v. Rich* (1986), 141 Ill. App. 3d 1046, 490 N.E.2d 1368, where a similar claim was made and rejected. On these facts, the videotape was properly admitted and no undue prejudice accrued to defendant.

■ Similarly, defendant was not prejudiced by the trial court's refusal to permit defendant's alleged expert, Robert Ross, from attesting to the cost of an annuity. We addressed the propriety of Ross' proposed testimony earlier in *Singh v. Air Illinois, Inc.* (1988), 165 Ill. App. 3d 923, and concluded that in light of our supreme court's admonition that annuity testimony should be presented only with neutral figures to describe a mathematical process to aid the jury in determining present value (*Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, 133 N.E.2d 288, *cert. denied* (1956), 352 U.S. 833, 1 L. Ed. 2d 53, 77 S. Ct. 49), it was not error for the trial court to preclude its admission. We also noted in *Singh* that as an insurance broker relying on final quotations from outside sources, Ross could not be effectively cross-examined as to the basis of his figures. For these reasons, Ross' testimony was properly barred here, particularly where defendant apparently had available expert economist Dr. Rawleigh Ralls to testify as to the pecuniary damage sustained by plaintiff.

■ We also reject defendant's assertion that the trial court erred in prohibiting defense counsel from inquiring into the financial status

of Thomas Heagy, decedent's husband, to rebut the presumption of substantial loss. Illinois law makes clear that the wealth, health, poverty or helplessness of the beneficiary cannot be considered in determining the damages in an action for wrongful death. (*Freehill v. DeWitt County Service Co.* (1970), 125 Ill. App. 2d 306, 261 N.E.2d 52.) Indeed, Illinois Pattern Jury Instructions, Civil, No. 31.07 (2d ed. 1971) (hereinafter IPI Civil 2d No. 31.07) expressly provides that in determining pecuniary damages, a jury may not consider the poverty or wealth of the widow and next of kin.

■■ Defendant further argues that it suffered prejudice by not being permitted to cross-examine decedent's husband about discount rates and investment yields. While Mr. Heagy was in fact chairman of the asset liability committee of Exchange National Bank, he did not testify in the capacity of an expert during direct examination, and therefore, may not properly be cross-examined as one on matters beyond the scope of direct examination. *Nunley v. Mares* (1983), 114 Ill. App. 3d 779, 449 N.E.2d 864 (scope of cross-examination is limited to matters elicited on direct examination).

■■ Defendant next contends that on three occasions, plaintiff's attorney improperly asked the jury to place a value on human life, and that during closing argument, he erroneously introduced the concept of inflation. A careful review of the record reveals that with respect to counsel's references to human life, defendant objected only once, and in that instance, plaintiff's counsel merely stated, "[Y]our responsibility and obligation in this case is to assess damages for human life." This statement is not only innocuous, but is also legally correct when viewed in the context of counsel's entire closing argument, which delineated the proper elements of damages in wrongful death cases. Accordingly, no prejudice resulted, and even assuming otherwise, it did not amount to reversible error. See *Crump v. Universal Safety Equipment Co.* (1979), 79 Ill. App. 3d 202, 398 N.E.2d 188 (statement must be so "clearly improper and prejudicial" to meet the standard for reversal of a verdict due to improper argument).

●■ Similarly, plaintiff's counsel's reference to inflation in closing argument was not so clearly improper and prejudicial. The comment merely analogized inflation to the concept of growth rate attested to by plaintiff's expert, Dr. Peter Senn. Moreover, in those decisions where a reference to inflation has been challenged, reviewing courts, while not reaching the propriety of such statements, have refused to set aside the verdicts because they were supported by "other proper evidence." (*Raines v. New York Central R.R. Co.* (1972), 51 Ill. 2d 428, 283 N.E.2d 230, *cert. denied* (1973), 409 U.S. 983, 34 L. Ed. 2d

247, 93 S. Ct. 322; *Meador v. City of Salem* (1972), 51 Ill. 2d 572, 284 N.E.2d 266; *Crabtree v. St. Louis-San Francisco Ry. Co.* (1980), 89 Ill. App. 3d 35, 411 N.E.2d 19; *Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 343 N.E.2d 207.) Here, too, the verdict was supported by "other proper evidence." At the time of her death, decedent was 33 years old, a loving wife, and earning $33,895 annually with the potential to earn approximately six times that amount within a relatively short period of time. We therefore cannot say that counsel's argument warrants reversal of the $1,500,000 verdict against defendant.

●■ Defendant additionally maintains that the trial court submitted five erroneous instructions to the jury, the first of which omitted that portion of Illinois Pattern Jury Instructions, Civil, No. 21.02 (2d ed. 1971) which enables the jury to find for the defendant if any of the burden of proof propositions have not been proved. As given, plaintiff's tendered instruction number 8 provided, "The plaintiff has the burden of proving the amount of pecuniary damage suffered by the husband of the decedent Regina Polk Heagy." Since liability was not in issue in the instant proceeding and only damages were to be assessed, this instruction was not in error, as no defense verdict could have properly been rendered under the evidence presented at trial. *Seward v. Griffin* (1983), 116 Ill. App. 3d 749, 452 N.E.2d 558 (no instruction need be presented to jury concerning issue not raised by pleadings or proof).

●■ According to defendant, the trial court also erred in instructing the jury pursuant to Illinois Pattern Jury Instructions, Civil, No. 31.04 (2d ed. 1971) (hereinafter IPI Civil 2d No. 31.04), which listed the factors to be considered in arriving at pecuniary loss. Specifically, defendant argues that the evidence presented on the amount of money, goods and services decedent was likely to have contributed in the future was based solely on conjecture and speculation. As noted earlier, such evidence was not speculative, but was based on unequivocal testimony from competent witnesses. Consequently, defendant's argument must fail.

●■ Likewise, defendant's objection to IPI Civil 2d No. 31.07, which provides that the grief, sorrow, and poverty or wealth of the widower may not be considered in determining pecuniary injuries, is without merit. This instruction accurately reflects Illinois law (*Freehill v. DeWitt County Service Co.* (1970), 125 Ill. App. 2d 306, 261 N.E.2d 52), and therefore, it is improper for defendant to argue that decedent's husband is entitled to less because of his financial status.

●■ Defendant also challenges plaintiff's instruction number 13 which states that "[d]amages for loss of companionship, sexual relations and loss of society are not reduced to present cash value." While Illinois Pattern Jury Instructions, Civil, Nos. 34.02 and 34.04 (2d ed. 1971), make clear that all future economic damages are to be reduced to present value, future noneconomic damages (*i.e.*, pain and suffering, disability and disfigurement) are not, the reason being that noneconomic damages "have no commercial value to which a jury can refer" and cannot be translated "into monetary units with *** precision." (*Caley v. Manicke* (1962), 24 Ill. 2d 390, 392, 182 N.E.2d 206, 208.) Just as pain and suffering, loss of companionship, sexual relations and society cannot be calculated to the same arithmetic certainty as economic injury. Accordingly, the jury was properly instructed.

●■ Lastly, defendant urges that the portion of plaintiff's tendered instruction number 16 which read that "[t]here is no issue as to the liability of the defendant for the damages" misled the jury into believing defendant was responsible for the crash. On the contrary, the jury was advised at the outset that the only issue in question was the amount of damages to award. In order to avoid confusion, the jury was properly instructed that there was no issue before it as to the liability of defendant for damages which may have proximately resulted from the occurrence. Since the instruction does not suggest that defendant admitted liability, it is not incorrect or prejudicial.

●■ We now consider defendant's claim that the trial court erred in refusing to give three instructions to the jury. The first of these non-IPI instructions stated that decedent's earning capacity and wages are not themselves the measure of the economic support and pecuniary loss suffered by the decedent's heirs. This same point, however, was addressed in plaintiff's instruction 9 (IPI Civil 2d No. 31.04), which governs the measure of damages in wrongful death actions. Given that plaintiff's IPI instruction accurately stated the law, the trial court did not err in refusing defendant's non-IPI instruction. *Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 449 N.E.2d 211.

●■ For the first time on appeal, defendant contends that by refusing to tender the foregoing instruction, the trial court precluded the jury from considering the impact of taxes. Yet, the record is devoid of any indication that defendant attempted to introduce evidence with respect to this issue. Equally unpersuasive is defendant's related argument that he should have been permitted to demonstrate that net, rather than gross, wages are the proper measure of damages. In

*Hall v. Chicago & Northwestern Ry. Co.* (1955), 5 Ill. 2d 135, 125 N.E.2d 77, our supreme court ruled that gross earnings, not net, is the proper figure to use in computing earning capacity and damages. See also *McCann v. Lisle-Woodridge Fire Protection District* (1983), 115 Ill. App. 3d 702, 450 N.E.2d 1311.

Also unavailing is defendant's position that the jury should have been instructed that any award in favor of plaintiff would not be subject to income tax. Not only was such an instruction never tendered by defendant at trial, but also the Illinois Supreme Court recently addressed this issue in *Klawonn v. Mitchell* (1985), 105 Ill. 2d 450, 475 N.E.2d 857, and held that in cases involving purely State law, juries should not be advised as to the nontaxability of damage awards. See also *Wiedemann v. Industrial Erectors, Inc.* (1985), 137 Ill. App. 3d 47, 483 N.E.2d 990.

●■ Defendant's non-IPI instruction number 4, which states that the jury must deduct from decedent's future earnings those amounts which decedent could not or would not have contributed to her husband, was also properly denied. Given that this principle of law was adequately contained in plaintiff's instruction 9 (Illinois Pattern Jury Instructions, Civil No. 31.06 (2d ed. 1971)), which admonished the jury to consider "what [decedent] spent for customary personal expenses and other deductions," it was not error for the trial court to reject defendant's instruction. (*Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 347 N.E.2d 320.) Further, defendant's tendered instruction isolates one of the several factors to be considered in calculating damages and, therefore, was improper for emphasizing that factor over others. *Handell v. Chicago Transit Authority* (1961), 30 Ill. App. 2d 1, 173 N.E.2d 529.

●■ Finally, defendant asserts that the trial court erred in refusing defendant's instruction number 5, which stated that the jury should consider that other defendants, once sued by plaintiff, had settled with plaintiff. To support its position, defendant relies on *Greenemeier v. Spencer* (Colo. 1986), 719 P.2d 710, contending that this instruction was necessary so that the jury would not infer that defendant was solely responsible for the accident. In *Singh v. Air Illinois, Inc.* (1988), 165 Ill. App. 3d 923, where defendant sought to introduce the same instruction, we determined that *Greenemeier* was unpersuasive since this court advocates that the court, and not the jury, apply "setoff" once the jury has determined total damages without knowledge of any prior settlements between plaintiff and any other defendants. (See *Webb v. Toncray* (1981), 102 Ill. App. 3d 78, 429 N.E.2d 874.) Given that defendant here failed to offer evidence as

to any settlements during its case in chief, we believe that defendant's instruction number 5 was correctly refused.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and MANNING, J., concur.