PATSY HASHEY LORENZ, Special Adm'r of the Estate of Jerome R. Lorenz, Deceased, Plaintiff-Appellee, v. AIR ILLINOIS, INC., Defendant-Appellant.

First District (1st Division) No. 87—0873

Opinion filed April 18, 1988.

Pretzel & Stouffer, Chartered, of Chicago (Michael J. Merlo, Robert Marc Chemers, and Michael G. Bruton, of counsel), for appellant.

Feirich, Schoen, Mager, Green & Associates, of Carbondale (John C. Feirich and Michael F. Dahlen, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This is the third in a series of actions arising out of the crash of Air Illinois, Inc. (defendant), flight 710, en route from Springfield to Carbondale, Illinois, on October 11, 1983.[1] Patsy Hashey Lorenz, special administrator of the estate of her husband Jerome E. Lorenz (decedent), a passenger on flight 710, was awarded $925,000 following a jury trial on the issue of damages. The trial court subsequently reduced the verdict by $232,346 to account for a settlement reached by plaintiff and other named defendants (settling defendants). Defendant

---

[1] In *Singh v. Air Illinois, Inc.* (1988), 165 Ill. App. 3d 923, and *Exchange National Bank v. Air Illinois, Inc.* (1988), 167 Ill. App. 3d 1081, this court upheld damage awards of $400,000 and $1,500,000, respectively, to the estates of two passengers on Flight 710.

now appeals this judgment, alleging numerous errors regarding certain evidence and jury instructions. Defendant also urges error with respect to the trial court's dismissal of its third-party claims against settling defendants, its refusal to grant defendant's requests for continuances, and its alleged failure to discount the settlement in the same manner as the jury's award. For the reasons discussed below, we affirm.

The evidence at trial revealed that decedent was born on August 21, 1944, and received a bachelor's degree, a master's degree, and a Ph.D. from the University of Wisconsin. At the time of his death, decedent, who was in excellent health, was a full professor and director of the rehabilitation institute at Southern Illinois University in Carbondale earning an annual income of approximately $43,716. In this position, decedent taught as well as administered programs involving academics, rehabilitation of the handicapped, and child abuse.

The evidence further disclosed that decedent was survived by his widow and two daughters, ages 13 and 16 at the time of decedent's death, all three of whom were dependent upon decedent for financial support. Decedent had a close and loving family relationship, performed various household chores, and participated in his children's moral and intellectual development.

On appeal, defendant initially contends that the trial court erred in dismissing its third-party claims against those who settled with plaintiff and granting "good faith" findings in their favor. Specifically, defendant argues that the trial court's actions were taken without a hearing, thereby depriving defendant of its constitutional right to due process, and that the Illinois Contribution Act (Ill. Rev. Stat. 1985, ch. 70, pars. 301 through 305) (Act), upon which these actions were taken, is vague and ambiguous and denies defendant equal protection under the law. The Act provides, in substance, that a tortfeasor who settles with a claimant in good faith is discharged from all liability for any contribution to any other tortfeasor. *Perez v. Espinoza* (1985), 137 Ill. App. 3d 762, 484 N.E.2d 1232.

■ We note that nowhere in defendant's post-trial motion and supporting memorandum, or in its brief in opposition to the good-faith finding, does defendant raise any of the above constitutional challenges. Accordingly, they are deemed waived. (*Danielson v. Elgin Salvage & Supply Co.* (1972), 4 Ill. App. 3d 445, 280 N.E.2d 778.) Despite defendant's contention to the contrary, we believe that raising these issues in a prior appeal or in a motion for Rule 308 (107 Ill. 2d R. 308) certification is an insufficient basis upon which to preserve them for our review.

■ In any event, based on counsel's representations at a hearing held on March 31, 1986, to set an immediate trial date, it appears that a hearing was in fact conducted on the issue of good faith on March 19, 1986, although the transcript of this proceeding was not furnished by defendant in the record on appeal. In addition, defendant argued at length the parties' "bad faith" in reaching the settlement at the March 31 hearing and was permitted to file a brief in opposition to the court's good-faith finding.

Notwithstanding these facts, defendant was not entitled to the hearing it seeks as a matter of law. In *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792, *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 478 N.E.2d 581, and *Perez v. Espinoza* (1985), 137 Ill. App. 3d 762, 484 N.E.2d 1232, the appellate court, after noting that the Act makes no provision for such a hearing, declined to require separate evidentiary hearings for the determination of good faith. Rather, it chose to leave the type of hearing necessary to fully adjudicate the issue to the discretion of the trial court. Here, the trial court heard arguments of counsel, an appropriate basis upon which to make a determination of good faith. (*Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 478 N.E.2d 792.) Consequently, the trial court did not err in reaching its decision without conducting a trial.

■ Defendant next maintains that the trial court improperly admitted the testimony of Dr. Sam Goldman, the former dean of the college of human resources at Southern, that had decedent lived, he would have become dean of the university. Defendant argues that this event was not likely to happen, and therefore such testimony permitted the jury to speculate about future salary increases decedent would have obtained in that position.

After reviewing the record, it appears that Goldman's projection was reasonably certain to occur. In reaching his conclusion, Goldman, whose testimony was based upon his own experience as well as his familiarity with decedent's career and potential for advancement, considered the fact that decedent had already achieved the highest professorial rank, had held a very strong administrative post at the university, and was quite young. Thus, unlike the plaintiff in *Christou v. Arlington Park Race Track* (1982), 104 Ill. App. 3d 257, 432 N.E.2d 920, where such testimony was in error, becoming dean of the university was not merely an "ambition" of decedent's, but rather a goal which decedent had the ability to attain. Clearly, any lack of certainty concerning decedent's advancement was elicited by defense counsel on cross-examination of the witness. Despite Goldman's testi-

mony that decedent would have eventually become dean, he offered no opinion as to salary or income that might have resulted therefrom. Rather, the record reveals that Goldman only discussed those salary increases decedent would have received in his current position as director. Accordingly, his testimony was proper.

■ Defendant also argues that the trial court erred when it permitted plaintiff's expert economist, Dr. Charles Linke, to testify regarding information contained in a report he prepared in 1986 on the present value calculation of decedent's earning capacity. Specifically, defendant contends that this report, which it received shortly before trial, contained assumptions and conclusions different from those in Linke's original 1984 report, and as a result, the 60-day requirement of Supreme Court Rule 220(b) was violated. (107 Ill. 2d R. 220(b).) As noted in our related decision *Singh v. Air Illinois, Inc.* (1988), 165 Ill. App. 3d 923, where we addressed the same challenge to Linke's testimony, the 60-day limitation in Rule 220(b) is implemented to insure that discovery regarding expert witnesses not otherwise disclosed is completed sufficiently before trial. Here, Linke was otherwise disclosed to defendant, and thus Rule 220(b) does not apply. Moreover, having reviewed the two reports, there appears to be no material change in the basic methodology or tables used by Linke to calculate present cash value. Any changes appearing in the 1986 report merely update the prior report with more recent data and sources, an issue on which defense counsel was permitted to depose Linke prior to trial.

■ Defendant further urges that the trial court erroneously permitted the jury to consider an editorial, published in the Journal of Rehabilitation Administration of which decedent had been editor, commemorating decedent's accomplishments. Defendant asserts that the editorial was not only irrelevant, but also constituted hearsay, as its authors were not available for cross-examination. Defendant's hearsay objection clearly has no merit as the record discloses that the editorial in question was introduced through the testimony of Dr. William Emener, one of its co-authors. With respect to defendant's relevancy objection, we must presume that the trial court acted properly in admitting the exhibit into evidence as it was not made part of the instant record. *In re Estate of Friedman* (1984), 123 Ill. App. 3d 82, 462 N.E.2d 692 (appellate court is bound to review the circuit court's judgment solely in light of the evidence contained in the record on appeal).

■ As in the prior two wrongful death actions this court has considered arising from the crash of flight 710, defendant attacks the

trial court's exclusion of the annuity testimony of Robert Ross, an insurance broker, and Mitchell Serota, an actuary. Specifically, pursuant to the offer of proof made in *Exchange National Bank v. Air Illinois, Inc.* (1988), 167 Ill. App. 3d 1081, Mr. Ross would have attested to the cost of a particular annuity, while the offer of proof made in *Singh* for Mr. Serota indicated that he would describe to the jury the mathematical calculations underlying that cost.

While our supreme court has sanctioned the use of annuity tables to establish present cash value (*Allendorf v. Elgin Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, 133 N.E.2d 288, *cert. denied* (1956), 352 U.S. 833, 1 L. Ed. 2d 53, 77 S. Ct. 49), it has never approved testimony of the character that defendant sought to introduce. On the contrary, an expert is only "to describe to the jury a mathematical process that will simplify the jury's task of determining the present value" using "neutral figures." (8 Ill. 2d at 178, 133 N.E.2d at 295.) To hold otherwise, as one court has noted, would "mislead the jury into accepting the hypothetical figure of another instead of an actual figure to be arrived at by them under the instructions, or a figure based on such use of '*annuity table as they might consider proper* ***.' " (Emphasis in original.) *Caldwell v. Southern Pacific Co.* (S.D. Cal. 1947), 71 F. Supp. 955, 958.

██ Aside from the foregoing evidentiary issues, defendant contends that the trial court submitted several erroneous instructions to the jury, the first of which instructed the jury, in part, on the issue of future earnings and on the loss of "instruction, moral training, superintendence of education and society" suffered by decedent's children. As to decedent's future earnings, defendant argues that the testimony presented on this subject was speculative, yet defendant failed to make this objection at the jury instruction conference, and thus, cannot now raise it on appeal. (*Henderson v. Hudson* (1984), 121 Ill. App. 3d 780, 460 N.E.2d 10.) Even assuming otherwise, as noted earlier, Dr. Sam Goldman provided competent testimony on this issue to sustain that portion of the instruction.

Moreover, contrary to defendant's assertion, there was ample evidence introduced as to the losses suffered by decedent's children to support the other challenged portion of the instruction, as well as plaintiff's tendered instruction No. 8, which further directs the jury to consider the children's damages. Plaintiff testified that decedent "made a special effort to spend time with [their children], to take them places, do things with them, discipline them." She also stated that decedent helped them with their homework and thinking processes, and frequently took them swimming, on picnics, and to the cir-

cus. Further, there was testimony that decedent provided financial support for both his daughters. In light of this undisputed evidence, the above instructions were properly submitted to the jury.

Equally unavailing are defendant's objections to that portion of plaintiff's tendered instruction No. 9A which provides that "[d]amages for loss of companionship, sexual relations and society are not reduced to present cash value," and plaintiff's instruction No. 10 which defines the term "society" as:

"[T]he mutual benefits that each family member receives from the other's continued existence, including love, affection, care, attention, companionship, comfort, guidance, and protection."

Defendant contends that the former instruction, which is taken from an unpublished but revised draft of Illinois Pattern Jury Instructions, does not accurately reflect the law in Illinois and that the latter instruction, also taken from the revised draft, was not supported by the evidence at trial, unduly highlights certain damages, and is cumulative of other instructions. Both contentions are without merit.

With respect to instruction No. 9A, not only does defendant fail to cite any authority to support its position that such damages are to be reduced to present cash value, but it also overlooks the fact that Illinois Pattern Jury Instructions, Civil, Nos. 34.02 and 34.04 (2d ed. 1971) (hereinafter IPI Civil 2d), make clear that future noneconomic damages such as pain and suffering, disfigurement, and disability, damages which are akin to those in No. 9A, are not to be so reduced. Regarding defendant's challenge to instruction No. 10, while plaintiff's tendered instruction No. 7 mentions the word "society," it is not defined anywhere in any of the given instructions, and therefore is not cumulative, as defendant claims. Furthermore, plaintiff testified extensively to the loss of society both she and her children suffered as a result of decedent's death, thus warranting the giving of this instruction.

Defendant next argues that the trial court erred in refusing to give seven instructions to the jury. The first two instructions, Nos. 6 and 6A, would allow the jury to infer that any evidence or witness's testimony, respectively, not offered but within the control of a party is adverse to that party. (IPI Civil 2d No. 5.01.) Specifically, the IPI instruction reads:

"If a party to this case has failed [to offer evidence] [to produce a witness] within [her] power to produce, you may infer that the [evidence] [testimony of the witness] would be adverse to that party if you believe each of the following elements:

1. The [evidence] [witness] was under the control of the

party and could have been produced by the exercise of reasonable diligence.

2. The [evidence] [witness] was not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstances would have [offered the evidence] [produced the witness] if he believed [it to be] [the testimony would be] favorable to him.

4. No reasonable excuse for the failure has been shown." (IPI Civil 2d No. 5.01.)

Defendant maintains that these negative inference instructions were warranted as plaintiff failed to introduce evidence of decedent's income from his consulting practice and failed to make decedent's children available for trial.

Plaintiff asserts on appeal, as she did in the trial court, that there was no evidence within her control as to decedent's future income from consulting work, and since defendant has failed to establish otherwise, the instruction as it relates to evidence was correctly refused. Likewise, there has been no showing that decedent's children were not equally available to defendant. More importantly, given that their relationship with decedent was fully described by plaintiff, no prejudice resulted from the children's absence at trial.

■■ Additionally, defendant claims that the trial court committed reversible error in denying its non-IPI instruction No. 10, which states that the jury must deduct those amounts in determining present cash value which decedent could not or would not have contributed to his wife's support, on the ground that in its absence, the jury would not take into account the consequences of decedent's personal consumption and income taxes. The measure of damages in a wrongful death action, however, was adequately addressed in plaintiff's IPI instruction No. 7, which admonished the jury to consider, among other things, "[w]hat money, goods and services the decedent customarily contributed in the past" and "was likely to have contributed in the future," as well as what he "spent for customary personal expenses." To have given further instruction on these elements as defendant urges would have unduly highlighted certain evidence resulting in prejudice to plaintiff. (*Monier v. Winkler* (1987), 158 Ill. App. 3d 724, 511 N.E.2d 246.) Furthermore, the jury had before it expert testimony on behalf of both parties regarding personal consumption and evidence of decedent's income taxes for the years 1980, 1981, 1982 and 1983. These issues were specifically called to the jury's attention by defense counsel in closing argument. For these rea-

sons, the trial court did not err in rejecting defendant's instruction No. 10.

The above reasoning applies with equal force to defendant's refused non-IPI instruction No. 11, which provides that decedent's earning capacity and wages are not themselves the measure of the economic support and pecuniary loss by his heirs.

■ Further, defendant's tendered instruction No. 12, which states that any award to plaintiff is exempt from income tax, is contrary to *Klawonn v. Mitchell* (1985), 105 Ill. 2d 450, 475 N.E.2d 857, where our supreme court held that a jury should not be advised as to the nontaxability of damage awards. (See also *Wiedemann v. Industrial Erectors, Inc.* (1985), 137 Ill. App. 3d 47, 483 N.E.2d 990.) While the Federal appellate court has ruled otherwise in *Lux v. McDonnell Douglas Corp.* (7th Cir. 1986), 803 F.2d 304, that decision is of no precedential value in the instant case, where our supreme court has clearly decided the issue concerning State law.

■ Similarly, defendant was not entitled to a non-IPI instruction informing the jury that other defendants had reached a settlement with plaintiff. Again, defendant cites no controlling authority to support the submission of such an instruction, and it would be pure speculation to find, as defendant suggests, that the jury inflated its damage award because it assumed defendant was solely responsible for the crash. The amount of damages awarded plaintiff was clearly within the range of reasonable compensation based on the evidence, and therefore was properly assessed by the jury. In fact, the procedure followed by the trial court in this case, applying "setoff" once the jury had determined total damages without knowledge of any prior settlement between plaintiff and any other defendant, was specifically upheld by this court in *Webb v. Toncray* (1981), 102 Ill. App. 3d 78, 429 N.E.2d 874.

■ Pursuant to its instruction No. 15, defendant requested that the jury value the "society" and "money, goods, and services" decedent would have provided from the "date of death to the date of trial and in the future." Although not originally tendered as one, defendant now argues that this "special interrogatory" should have been submitted to the jury as "It is upon an ultimate question of fact and is in proper form." (*Stach v. Sears, Roebuck & Co.* (1981), 102 Ill. App. 3d 397, 411, 429 N.E.2d 1242, 1252.) Defendant's argument must fail on both counts. First, the mere itemization of damages does not involve an "ultimate question of fact," and second, given that the instruction excludes certain damages not within the purview of "society" as defined by other instructions, its form was inappropriate.

Defendant's reference to section 2—1109 of the Code of Civil Procedure is misplaced, as that provision permits itemized verdicts in cases "where damages for injury to the person are assessed," not in wrongful death actions. Ill. Rev. Stat. 1985, ch. 110, par. 2—1109.

■■■ Next, defendant asserts it was denied a fair trial when the trial court refused to grant its requests for continuances based upon the poor health of its expert economist Dr. Rawleigh Ralls and its mistaken impression that decedent's ex-wife and adopted daughter would be subpoenaed by plaintiff. It is well established that the exercise of a trial court's discretion in granting or denying a continuance shall not be disturbed absent a manifest abuse of that discretion. (*Madison Associates v. Bass* (1987), 158 Ill. App. 3d 526, 511 N.E.2d 690.) Here, when the trial court was first made aware of Ralls' malignant melanoma on October 20, 1986, the date scheduled for trial, Ralls was not undergoing any treatment nor was any date set for its commencement. Under these circumstances, the trial court properly stated, "In the absence of any evidence of physical or mental change in Ralls' condition, I would deny the motion." Moreover, two days later, on October 22, 1986, Ralls testified extensively on defendant's behalf regarding present cash value. Consequently, no harm accrued to defendant.

Regarding decedent's ex-wife and adopted daughter, decedent did not request a continuance until the conclusion of the jury instruction conference, after all of the evidence was presented in this case. Since nothing precluded defendant from serving these two witnesses earlier, there was no "sufficient excuse" for the delay as required by Supreme Court Rule 231(f) (107 Ill. 2d R. 231(f)).

■■■ Finally, it is necessary to consider defendant's contention that the trial court erred in reducing the verdict by $232,346, the cost of an annuity, as opposed to the present cash value of the $281,500 settlement agreed upon by plaintiff and the settling defendants. Defendant argues that the action violated *La Salle National Bank v. City of Chicago* (1987), 154 Ill. App. 3d 456, 506 N.E.2d 1326, which requires that a settlement and a jury award be discounted in the same manner. While the trial court's March 12, 1987, order prepared by defense counsel refers to the $232,346 as "being the cost of an annuity," it is apparent that the trial court intended that this figure reflect the present cash value of future installments totaling $199,000 and the present cash payment of $82,500 pursuant to the terms of the settlement agreement. The court's intention was expressed at a hearing held on February 20, 1987, during which the court stated:

"And I think John [referring to plaintiff's counsel] kind of

wraps it up with his suggestion that the verdict was in present cash value, therefore, any deduction from it should also be in that form. For that reason, I would allow the setoff in the amount of the present cash value of the structured settlement."

Therefore, in applying setoff, the trial court complied with the ruling in *La Salle National Bank*, and no error occurred.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and O'CONNOR, J., concur.