NO. 4-97-0819

November 16, 1998

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

SHEILA MORRIS, ) Appeal from

Plaintiff-Appellant and ) Circuit Court of

Cross-Appellee, ) Sangamon County

and ) No. 93L640

AARON PASBRIG, ) 

Plaintiff, ) 

v. ) 

SHANNON MILBY, ) Honorable

Defendant-Appellee and ) Stuart H. Shiffman,

Cross-Appellant. ) Judge Presiding.

JUSTICE GREEN delivered the opinion of the court:

On May 5, 1992, defendant, Shannon Milby, rear-ended a car in which plaintiff Sheila Morris was driving plain­tiff Aaron Pasbrig to school.  On December 29, 1993, Morris and Pasbrig sued Milby, seeking damages for their person­al injuries.  On February 5, 1997, a jury returned a verdict in favor of the plain­tiffs, who appeal, claiming that errors commit­ted by the trial court pre­vented them from recover­ing the full amount of their damages.

Plaintiffs' various assign­ments of error can be summa­

rized as presenting the following six issues: (1) whether the trial court erred by grant­ing partial summary judgment in favor of defendant as to Morris' lost wages and diminished earning capaci­ty; (2) whether the court abused its discretion by allowing Milby's attor­ney to cross-examine Morris about a state­ment she purported­ly made to her family physician, even though Milby never complet­ed the impeach­ment by offering the state­ment into evi­

dence; (3) whether the court erred by allowing Milby's attorney to cross-examine Morris' treating chiroprac­tor about the contents of medical records that the chiropractor did not use in forming his opinion; (4) whether the court abused its discretion by disal­lowing Morris' medical records from being sent back with the jury; (5) whether the court abused its discre­tion by exclud­ing portions of Morris' chiropractic evidence as a discov­ery sanc­

tion; and (6) whether the court abused its discre­tion by refusing to bar portions of Milby's evidence as a discov­ery sanc­tion.

Although the plaintiffs' notice of appeal included Pasbrig as an appellant, none of the claims of error pertain to his case.  According­ly, the trial court's judgment is affirmed as to Pasbrig.  However, we reverse and remand the court's judgment as to Morris' claim.  Because our reversal is based on Morris' first claim of error, we will not address many of the issues she has raised on appeal.

Morris first argues that the trial court erred when it granted Milby's motion for partial summary judgment, thereby pre­clud­ing Morris from seeking damages for lost wages and diminished earning capaci­ty.  We agree.  

In ruling on a motion for summary judgment, the trial court must consid­er the affida­vits, deposi­tions, admissions, exhibits, and pleadings on file and must construe them strictly against the movant and liberally in favor of the nonmoving party.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113, 649 N.E.2d 1323, 1326 (1995).  A triable issue of fact, precluding summary judgment, exists when there is a dispute as to material facts or when the material facts are undis­puted but reasonable persons might draw different inferences from those facts.  In cases involving summary judgment, a reviewing court reviews the evidence in the record 
de
 
novo
.  
Truman L. Flatt & Sons Co. v. Schupf
, 271 Ill. App. 3d 983, 986, 649 N.E.2d 990, 993 (1995).

Milby contends that the record contains no admissi­ble evi­dence regard­ing the loss of a promotion that Morris had been expect­ing from her employer shortly after the time of the acci­

dent.  Specif­i­cal­ly, Milby claims that Morris' evidence regard­ing the promo­tion would be remote and speculative, because Morris never was prom­ised the promotion.  Milby then argues that the lack of admis­sible evidence as to the lost promotion com­pletely precludes Morris from presenting a claim for lost wages or diminished earning capacity.

Milby's argument fails because she isolates one piece of evi­dence and con­tests its admissibil­ity, but she never ad­

dresses the remaining evidence in the record that supports Morris' claim for lost wages or diminished earning capacity.  Thus, we need not address Milby's argument pertaining to the admissi­bility of the lost-promotion evidence before concluding that summary judg­ment was improper.

Diminished earning capacity measures the difference in the plaintiff’s ability to earn money before and after the injury.  
Antol v. Chavez-Pereda
, 284 Ill. App. 3d 561, 573, 672 N.E.2d 320, 329 (1996); 
Robinson v. Greeley & Hansen
, 114 Ill. App. 3d 720, 726, 449 N.E.2d 250, 254 (1983).  Under this defini­

tion, the plain­tiff need not prove a concrete drop in wages fol­

lowing the injury to claim damages for impaired earning capaci­ty.  
Antol
, 284 Ill. App. 3d at 573-74, 672 N.E.2d at 329.  Courts have even held evidence of the plaintif f's income to be irrele­

vant in some circumstances. See, 
e.g.
, 
Robin­son
, 114 Ill. App. 3d at 727, 449 N.E.2d at 255; 
Buckler v. Sinclair Refin­ing Co.
, 68 Ill. App. 2d 283, 294, 216 N.E.2d 14, 20 (1966).

Economic testimony is general­ly not required to prevent summary judgment on the issue of diminished earning capacity.  Rather, “the general rule is that the appear­ance of the plain­tiff on the witness stand, [her] testimony as to the nature of [her] injuries and their duration is suffi­cient to take the ques­tion of impaired earning capacity to the jury.”  
Harris v. Day
, 115 Ill. App. 3d 762, 772, 451 N.E.2d 262, 267 (1983); see also 
Patel v. Brown Machine Co.
, 264 Ill. App. 3d 1039, 1061, 637 N.E.2d 491, 505 (1994).    

In this case, Morris’ deposi­tion testimony, which the trial court had before it when it considered Milby's motion for partial summary judgment, provided suffi­cient­ evidence to take the question of impaired earning capacity to the jury.  Morris testified about the extent of her inju­ries, includ­ing pain she was feeling at work.  She described job tasks, such as lifting, that she was unable to do as a result of her inju­ries.  This testimony sufficiently creates a genuine issue of material fact, namely, whether the acci­dent affected Morris' ability to earn money.  
Patel
, 264 Ill. App. 3d at 1061, 637 N.E.2d at 505; 
Harris
, 115 Ill. App. 3d at 772, 451 N.E.2d at 267.  Additional­

ly, the record reflects that Morris missed work as a result of the accident, so it supports a reasonable inference that Morris lost wages.  Milby has not attempted to refute this inference.  Accord­ing­ly, summary judg­ment was improp­er; we reverse the trial court and remand for a new trial limited to the issue of Morris' damages.

The remaining issues that the parties have briefed and argued are not neces­sary to our dispo­si­tion of this appeal.  Howev­er, because several eviden­tiary issues are likely to resur­

face on remand, we will address them.

The first of these issues relates to a promotion that Morris claims she lost as a result of the accident.  Accord­ing to Morris' discov­ery deposi­tion testi­mo­ny, she was anticipating some changes at the store where she worked around the time of the accident.  Prior to the acci­dent, Mor­ris and Kevin Forestier, a coworker, had been slated to do “vendor set­ups,” an activi­ty that would require lifting.  They had not begun this activity at the time of the accident.  Howev­er, doing the vendor setups would make the two employ­ees eligible for a promotion to an assistant manager position.  Morris testi­fied that the assis­tant manager posi­tion would be a new position for the compa­ny, and it was possible, though not cer­tain, that both she and Forestier could be promot­ed.  Because of the acci­dent and her resulting inju­ries, Morris was unable to do the vendor setups.  Forestier proceeded to do the vendor setups, and he became an assistant manager.  Morris was laid off when the store where she worked closed.  

Citing 
Christou v. Arlington Park-Washington Park Race Tracks Corp.
, 104 Ill. App. 3d 257, 432 N.E.2d 920 (1982), Milby argues that evidence regarding Morris' lost promotion is too specula­tive, remote, and uncertain to be admitted.  We disagree.

A plain­tiff may present evi­dence of future earn­ings that were, prior to the injury, reason­ably certain to occur.  However, in some situations the future earnings are so uncertain or specu­la­tive that evi­dence of them cannot be admit­ted.  
Christou
, 104 Ill. App. 3d at 260, 432 N.E.2d at 923.  

In 
Christou
, the plaintiff was unem­ployed at the time of the acci­dent, but he was in train­ing to become a bartend­er.  In addition, he testified that it was his ambi­tion to eventu­ally become a restau­rant owner.  
Christou
, 104 Ill. App. 3d at 259-

260, 432 N.E.2d at 923.  The 
Christou
 court held that it was proper for the plain­tiff to testify about the loss of his expect­

ed position as a bartend­er.  Howev­er, the court found error in the admission of testi­mo­ny about restaurant owners' average weekly profits.  
Christou
, 104 Ill. App. 3d at 260, 432 N.E.2d at 923.  The 
Christou
 court thereby distin­guished between future earnings that are imminent and those that repre­sent a mere ambition of the plaintiff.  However, the court did not address the inter­me­di­ate situation, when future earnings result from normal career ad­vance­ment that had not become absolutely certain by the time of the injury.

Subsequent cases establish that absolute certainty is not a prerequisite to admitting evidence of future earn­ings.  In 
Ex­change Nation­al Bank v. Air Illi­nois, Inc.
, 167 Ill. App. 3d 1081, 1085-86, 522 N.E.2d 146, 148-49 (1988), the court upheld the admis­sion of testi­mony that a dece­dent in an airplane crash could have ad­vanced from her position as a union business agent to become the presi­dent of a local union, even though the change would take several years and probably require multiple promo­

tions.  In a differ­ent case, the court allowed evi­dence that a differ­ent victim of the same accident, a university professor with adminis­trative respon­sibil­ities, eventuall­y wo­uld have become dean of a univer­sity.  
Lorenz v. Air Illi­nois, Inc.
, 168 Ill. App. 3d 1060, 1064, 522 N.E.2d 1352, 1355 (1988).  These cases distinguish between a plaintiff's mere ambition and a "goal which [plaintiff] had the ability to attain."  
Lorenz
, 168 Ill. App. 3d at 1064, 522 N.E.2d at 1355.

After reviewing 
Christou
 and its progeny, one court summa­rized the standard for admitting testimony about possible job ad­vance­ment as fol­lows:

"Once it has been established with reasonable certainty that [plaintiff] would have experi­

enced job advancement, then the speculative nature of testimony regarding the commensu­

rate in­creas­es in pay is decreased to a point that its admission is not error.  [Citation].  Without such evidence, testimony regarding future earnings based solely upon the [plain­

tiff's] ambi­tion is speculation and inad­mis­

si­ble."  
Carlson v. City Construction Co.
, 239 Ill. App. 3d 211, 230-31, 606 N.E.2d 400, 411 (1992).

On this record, Milby's reliance on 
Christou
 is mis­

placed.  Morris did not propose to testify solely about an assistant manager's salary.  Rather, the contested evidence would have established with reasonable certainty that Morris would have experienced job advance­ment.  Specifically, Morris would have testi­fied that she was one of only two people being consid­ered for this particu­lar promo­tion and that her employer had concrete plans for her to begin doing work that would qualify her for the promotion.  This testimony estab­lishes that the promotion "was not merely an 'ambition' of [Mor­ris], but rather a goal which [she] had the ability to attain."  
Lorenz
, 168 Ill. App. 3d at 1064, 522 N.E.2d at 1355.  Thus, nothing in 
Christou
 or its progeny forbids the admission of the testimony.

Morris also claims that she was improperly impeached as a witness.  During cross-examination, Milby's attorney attempted to impeach Morris using statements that Morris purportedly made to her family physician years before the accident, but he never com­pleted the im­peach­ment by offering the state­ments into evidence.  We agree with Morris that Milby's attempted impeach­

ment was improp­erly executed, although we note that this error would not inde­pen­dent­ly warrant a new trial.

Impeachment through the use of a prior inconsistent state­ment must be com­plet­ed by later offer­ing evi­dence of the incon­sis­tent state­ment if the witness denies making it.  
Hackett v. Equip­ment Spe­cial­ists, Inc.
, 201 Ill. App. 3d 186, 197, 559 N.E.2d 752, 759 (1990).  The same rule applies when the witness gives equivocal answers to questions about the prior statement (
Rigor v. Howard Liquors, Inc.
, 10 Ill. App. 3d 1004, 1009, 295 N.E.2d 491, 495 (1973)) or when the authen­tic­i­ty of the prior state­ment is at issue (
Brad­ford v. City of Chica­go
, 132 Ill. App. 3d 317, 324, 476 N.E.2d 1221, 1226 (1985)).   

During Morris' cross-examina­tion, the following ex­change took place: 

     "Q.  [Milby's attor­ney:] And you went to a doctor in 1988, Dr. Carol, your family physi­cian, and told him you had pain in the head, neck pain and radiating down the arm, didn't you?

     A.  I told him I had 
chest
 
pain
 and it was radi­ating, yes, sir.

* * *

     Q.  Did you tell Dr. Dennis Carol in 1988 that you had complaints of dull headache radiating down into [the] neck and also down into [your] chest and arm?

     A.  I don't remember what I told him."  (Em­phasis added.)

After handing Morris a copy of the doctor's records, which were not in evidence, Milby's attorney continued:

     "Q.  ***  After reviewing that, does that re­fresh your recol­lec­tion that you told Dr. Carol you had headache, dull headache down your neck and [with pain] ra­di­at­ing down your arm in May of 1988?  Does that re­fresh your recol­lec­tion you told him that?

     A.  
That’s
 
not
 
what
 
it
 
says
."  (Emphasis added.)

Thus, Morris' responses gave rise to the cross-examin­

ing attorney's obligation to complete impeach­ment.  During the at­tempt­ed impeachment, Morris (1) answered equivo­cally, by stating she did not remember what she had told her doctor; and (2) ques­tioned the authen­ticity of the cross-examining attorney's reading of the medical records.  Since Milby's attorney never complet­ed the impeachment by offer­ing the records into evidence, this at­tempted impeach­ment was improper.  
Rigor
, 10 Ill. App. 3d at 1009, 295 N.E.2d at 495.

Although we conclude that the impeachment attempt was improp­erly executed, we note that this error would not inde­pen­

dent­ly provide a basis for reversal because Morris forfeited her claim of error.  A party who claims to be prejudiced when a prior incon­sistent statement is intro­duced but never authenti­cated must object at the time the state­ment is intro­duced and then preserve the objec­tion by making a timely motion to strike when the opposing party fails to offer extrinsic evidence of the state­

ment.  
Gillespie v. Chrys­ler Motors Corp.
, 135 Ill. 2d 363, 373, 553 N.E.2d 291, 296 (1990).  Here, Morris objected when the prior incon­sistent state­ments were first used but never moved to strike the testimo­ny.  Thus, she for­feited this claim of error.

Morris next argues that the trial court abused its discre­tion when it allowed Milby’s attorney to cross-examine her treat­ing chiroprac­tor about the contents of another doctor's medical reports after the treat­ing chiroprac­tor had testi­fied that he had not relied upon those reports in forming his opin­ion.  We agree.

In 
Wilson v. Clark
, 84 Ill. 2d 186, 192-95, 417 N.E.2d 1322, 1326-27 (1981), the supreme court held that the contents of medical records form a hearsay exception when they are used during the exami­nation of an opinion witness who relied upon them.  However, the court did not discuss the records’ admissi­

bility when the opinion witness did not rely upon them in forming his opinion. 

This latter question was addressed in 
People v. Pasch
, 152 Ill. 2d 133, 179-80, 604 N.E.2d 294, 312-13 (1992), and the supreme court declined to extend the hearsay exception from 
Wilson
 to medical reports that the opinion witness did not rely upon in forming his opinion.  However, the court did allow for limited, nonhearsay use of the reports. Specifically, an attor­ney may use the reports to probe the basis of the wit­ness’ opin­ion.  In fact, cross-exami­nation may even include hypothet­ical ques­

tions de­signed to deter­mine what effect the other doc­tors’ conclu­sions, if cor­rect, would have on the testi­fying witness’ opin­ion.  However, questions seeking to introduce the reports' contents or conclusions as substantive evidence violate the prohibition against hearsay.  
Pasch
, 152 Ill. 2d at 178-80, 604 N.E.2d at 312-13.

In 
Jager v. Libretti
, 273 Ill. App. 3d 960, 965-67, 652 N.E.2d 1120, 1124 (1995), the appel­late court illus­trat­ed the differ­ence between the proper and improper use of medical reports upon which the opinion witness did not rely.  The following line of question­ing improperly seeks to introduce the hearsay contents of a medical report as substantive evidence:

"'Q.  Doctor, in terms of medical termi­

nol­ogy and report: [w]hen you see a circle with a line through it, that means, negative, cor­rect?

A.  That’s correct.

Q.  And, Doctor, calling your at­tention to the eighth line down on the physician’s re­cord; [i]sn't there a notation with a circle and a line through it as to neck dis­comfort?

A.  That’s correct.'"  
Jager
, 273 Ill. App. 3d at 965, 652 N.E.2d at 1124.

However, the following question, makes proper nonhearsay use of the same report:

"'Q.  Okay, Doctor, if you would have known at the time that you based your diagno­

sis and treatment of the plaintiff that, in fact, at the time of the emergency room, that plain­tiff made no complaint of neck injuries and no indication of neck tender­ness; 

Would that affect your opinion in any way?

A.  No, it would not.'" 
Jager
, 273 Ill. App. 3d at 965, 652 N.E.2d at 1124.

In the case at bar, the treating chiroprac­tor (Dr. Louis Distasio) testified that he had not relied upon the re­cords from Morris' family physician (Dr. Dennis Carol), so the 
Wilson
 hearsay exception cannot apply to Carol's records.  
Pasch
, 152 Ill. 2d at 178-80, 604 N.E.2d at 312-13.  Never­the­less, the trial court al­lowed Milby's attor­ney to ask the follow­ing ques­tions:

"Q.  [Milby's attor­ney:] And you saw in Dr. Car­ol’s re­cords that he had diag­nosed the same thing, muscle contrac­tion headaches, in 1988, cor­rect? 

* * *

Q.  Probable muscle contraction head­

aches.  Is that what it says in the record? Am I reading that cor­rectly?

* * *

Q.  On June 18th, 1992, a little over a month after the accident, Sheila saw Dr. Carol; is that correct?

A.  Yes.

Q.  And at that time, Dr. Carol exam­ined her neck and found it unremarkable.  He exam­

ined other things, but he also examined her neck and found it unremarkable, correct?"

These questions seek to introduce the reports' contents as substantive evidence, in violation of the hearsay rule.  It was error to allow them.  

Because we are reversing on other grounds, we need not address whether the preju­dice commit­ted by admit­ting these questions is independently suffi­cient to warrant rever­sal.

We decline to review the merits of Morris' remaining claims, because we conclude they are unlikely to resurface on remand.  Howev­er, to avoid unnecessary prejudice, we vacate the trial court's order imposing discovery sanctions on Morris.  An impor­tant factor for the trial court to consid­er in deter­min­ing whether to issue discovery sanc­tions is the unfair sur­prise resulting from the discov­ery viola­tion.  
Shimanovsky v. General Motors Corp.
, 181 Ill. 2d 112, 124, 692 N.E.2d 286, 291 (1998).  Milby claims that she was unfairly surprised because Morris disclosed certain chiropractic records on the eve of trial.  Howev­er, that unfair sur­prise, assuming it was genuine, no longer exists since Milby now has the records and trial must be set anew.  Thus, we vacate the court's sanction order, and we further direct the trial court to set a new discov­ery sched­ule on remand to prevent further prob­lems.

In conclusion, we affirm the trial court's judgment in Pasbrig's claim, reverse the court's order granting partial summary judg­ment against Morris regarding her claim for lost wages and dimin­ished earning capacity, vacate the discov­ery sanc­

tions imposed against Morris, and remand for a new trial limited to the issue of Morris' damages.

Affirmed in part and reversed in part; cause remanded.

KNECHT and COOK, JJ., concur.