GERRIT E. JAGER, JR., *et al.*, Plaintiffs-Appellees, v. JOHN L. LIBRETTI IV, Defendant-Appellant.

First District (3rd Division)   No. 1—94—0438

Opinion filed June 21, 1995.

L. Bradley Schwartz, of Moss, Hillison & Mordini, of Chicago, for appellant.

Michael M. Resney, of Calumet City, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Gerrit E. Jager, Jr. (Jager), was involved in a rear-end automobile accident with defendant, John Libretti. Jager and his wife, Lisa, filed a two-count complaint against defendant. The first count stated a cause of action for injuries Jager sustained in the accident, and the second count stated a cause of action on behalf of Jager's wife for loss of consortium. Federal Kemper, the Jagers' insurer, filed a separate subrogation action against defendant, which was then consolidated with the Jagers' suit. The case was tried before a jury in the municipal division of the circuit court of Cook County. The jury found for the plaintiffs in the following amounts: for Gerrit Jager, $56,283.57; for Lisa Jager, $2,000; and for Federal Kemper, $6,436.49. The trial court entered judgment on the verdict.

On appeal defendant claims the following: (1) the trial court erred when it refused to allow defendant to cross-examine plaintiff's treating physician regarding emergency room records; (2) the trial court erred when it submitted only two verdict forms, rather than the six separate forms proffered by defendant; (3) the trial court erred when it refused to tender an Illinois Pattern Jury Instruction regarding impeachment by prior inconsistent statements or conduct; (4) the trial court erred when it refused to grant a mistrial when plaintiff's attorney questioned defendant about insurance; and (5) the trial court erred when it entered judgment upon the jury's verdict which was in excess of plaintiff's *ad damnum* clause. We find defendant's arguments to be without merit and affirm the judgment of the trial court.

The facts giving rise to this suit are as follows. On May 6, 1992, Jager's vehicle was stopped at a railroad crossing when defendant's car struck Jager's car from the rear. Jager's car sustained damage to the rear bumper. Jager was taken to the emergency room at Christ Hospital, where he was examined and released. The next day he returned to work, but later that day left to go to Palos Community Hospital. Plaintiff's treating physician, Dr. Bhoopal, described Jager's injury as "whiplash" and prescribed conservative physical therapy. Jager attended a total of nine sessions of therapy during a three-week period. The total of Jager's medical bills was $2,700. Jager remained away from work for about six weeks. Count I of the complaint, which stated the cause of action for Jager's injuries, prayed for damages not to exceed $15,000.

We first address defendant's argument that the trial court erred when it prevented him from cross-examining Dr. Bhoopal regarding emergency room records and the ambulance report. On direct examination, Dr. Bhoopal testified that he first saw Jager on May 12, 1992, six days after the accident. He further testified that on May 12th he examined Jager and prescribed pain medication for him. According to Dr. Bhoopal, he also prescribed for Jager nine sessions of physical therapy over a three-week period. Lastly, Dr. Bhoopal testified that it was his medical opinion that Jager suffered from "whiplash" due to the automobile accident on May 6, 1992.

On cross-examination, defense counsel tendered a copy of the Christ Hospital medical emergency room records and then began cross-examining Dr. Bhoopal as to their contents. Plaintiff's counsel made an objection to the cross-examination, which objection the trial court sustained. Defense counsel also sought to cross-examine Dr. Bhoopal with regard to an ambulance report. The trial court, *sua sponte*, prevented defendant from cross-examining Dr. Bhoopal as to the ambulance report. The emergency room records and the ambulance report show that Jager did not complain of neck discomfort to either the physician who treated him at the Christ Hospital emergency room or to the ambulance technician. Defendant claims that it was error for the trial court to prevent him from cross-examining Dr. Bhoopal concerning these records.

It is plain that if Dr. Bhoopal relied on the Christ Hospital emergency room records or the ambulance report in forming his opinion, defendant could have properly cross-examined Dr. Bhoopal regarding their contents. (See *People v. Pasch* (1992), 152 Ill. 2d 133, 178, 604 N.E. 2d 294, 312; see also Federal Rules of Evidence 705.) Moreover, a medical expert may be cross-examined as to records which he reviewed but which he did not rely upon. (*Piano v. Davison* (1987),

157 Ill. App. 3d 649, 671-72, 510 N.E.2d 1066, 1082.) In the present case, defendant argues adamantly that Dr. Bhoopal relied on the emergency room records and the ambulance report to form his opinion. In support of his position that "the doctor unequivocally testified that he personally relied on the contents of the underlying reports in forming his opinions regarding the plaintiff's injuries, treatment and prognosis," defendant offers the following testimony on cross-examination of Dr. Bhoopal:

"Q. Doctors such as yourself often rely on emergency room records, correct doctor?

A. That's correct.

Q. And it's just common practice to rely on these documents, isn't it?

A. That's correct.

Q. And you rely on these documents, again, in determining what type of treatment plan or diagnosis to make in regards to a patient, correct[?]

A. That's correct.

Q. Doctor, I'm showing you what's been marked Defendant's Exhibit Number Two for identification. Could you please tell me what this is a copy of?

A. This is a copy of the emergency room record at Christ Hospital.

Q. And, again, these are documents—this particular type of document is the type that doctors rely on, correct[?]

A. That's correct.

\*\*\*

Q. Now, doctor, you also have occasion to come across the various ambulance reports that go along with the hospital records, correct?

A. That's correct.

Q. And, again, these are the type of records that doctors such as yourself typically rely upon in terms of reaching a diagnosis and treatment plan, correct?

A. That's correct.

Q. And, in fact, reports such as that are pretty valuable because it indicates exactly what type of complaints your patient was complaining of immediately after the accident, right?

A. That's correct."

It is clear from the testimony set forth above that Dr. Bhoopal did not testify that he relied on the Christ Hospital emergency room records or on the ambulance report. Instead, the above testimony reflects only that doctors generally rely on such material when making their diagnosis. Significantly, defense counsel never asked Dr.

Bhoopal whether he relied on the emergency records from Christ Hospital or on the ambulance report in forming his opinion as to the nature and cause of Jager's injury. The record, furthermore, fails to support a finding that Dr. Bhoopal had ever reviewed the emergency room records or the ambulance report. The issue now properly framed is to what extent Dr. Bhoopal could be cross-examined regarding records which he neither relied upon nor reviewed in forming his opinion.

The Illinois Supreme Court addressed this question in *People v. Pasch* (1992), 152 Ill. 2d 133, 178, 604 N.E.2d 294, 312. At issue in *Pasch* was the defendant's sanity. The defendant produced an expert witness who testified that the defendant was legally insane. During the State's cross-examination of this expert, the State asked him whether he had heard of certain doctors and whether he knew that those doctors had examined the defendant and found him to be sane. Defendant's expert answered that he had heard of those doctors, but had not reviewed their reports. The State then cross-examined the defendant's expert regarding the contents of the aforementioned reports.

The supreme court held in *Pasch* that the trial court did not abuse its discretion in allowing defendant's expert to be cross-examined regarding records he did not review. A reading of *Pasch* indicates the relevant inquiry is whether the cross-examination is used substantively to introduce facts or data upon which the testifying expert did not rely. The supreme court in *Pasch* determined that the cross-examination there was not used to introduce substantively the contents of those records, but rather in an effort to impeach the testifying expert by asking whether other experts' data and conclusions would alter his opinion. According to the supreme court, the cross-examination attempted to elicit what factors the testifying expert considered and what factors he disregarded, or simply did not utilize. The supreme court concluded that such inquiry is proper.

In the present case defense counsel, after failing to elicit testimony from Dr. Bhoopal that he relied on the Christ Hospital emergency room records in forming his opinion, attempted to cross-examine Dr. Bhoopal as to the contents of those records. The cross-examination of Dr. Bhoopal reflects the following:

> "Q. Doctor, I'm showing you what's been marked Defendant's Exhibit Number Two for identification. Could you please tell me what this is a copy of?
>
> A. This is a copy of the emergency room record at Christ Hospital.
> ***

"Q. Doctor calling your attention to page two of that document; There's a physician's record, correct?

A. That's correct.

Q. And a physician's record is basically the notes of the treating doctor at the emergency room, correct?

A. That's correct.

Q. Doctor, in terms of medical terminology and report: When you see a circle with a line through it, that means, negative, correct?

A. That's correct.

Q. And, Doctor, calling your attention to the eighth line down on the physician's record; Isn't there a notation with a circle and a line through it as to neck discomfort?

A. That's correct."

At this point plaintiff's counsel made an objection, which the trial court sustained. A lengthy discussion outside the presence of the jury followed, during which the trial court stated to defense counsel that the court understood what defense counsel was attempting to do, but explained that it could not be done in the fashion defense counsel had just attempted. Before the jury once again, defense counsel continued his cross-examination:

"Q. Doctor, could you please take a moment to read through the physician's record there?

And when you're through please let me know.

\*\*\*

A. Okay.

\*\*\*

Q. Okay, Doctor, if you would have known at the time that you based your diagnosis and treatment of the plaintiff that, in fact, at the time of the emergency room, that plaintiff made no complaint of neck injuries and no indication of neck tenderness;

Would that affect your opinion in any way?

A. No, it would not.

Q. Would the fact that the only thing noted by the doctor was a head contusion in Christ Hospital, that there was no mention of neck pain or back dysfunction;

Would that affect your opinion in any way if you knew those facts?

A. No, not really."

■ Together, the two colloquies provide textbook examples of what is permitted on cross-examination and what is not. The first colloquy, during which defense counsel attempted to have the Christ Hospital emergency room records read into evidence, is a clear illustration of what the supreme court referred to as introducing

substantively the contents of another doctor's opinion. Just as clearly, the second colloquy provides an example of what the supreme court said was permissible, namely, allowing defense counsel to test the expert's opinion by asking if other facts, data, or opinions would alter his opinion. Essentially, an expert may be cross-examined with respect to reports he did not review and did not rely upon, if those reports are truly used as tools of impeachment, rather than as a Trojan Horse used to slip hearsay evidence into the trial. See *Bobb v. Modern Products, Inc.* (5th Cir. 1981), 648 F.2d 1051, 1055-56.

For the above reasons, we hold that trial court did not abuse its discretion when it barred defense counsel's first attempt at cross-examining Dr. Bhoopal concerning the Christ Hospital emergency room records and the ambulance report.[1]

Next, defendant argues that the trial court erred when it submitted only two verdict forms to the jury instead of the six proffered by defendant. The trial court submitted to the jury one form for a finding for all three plaintiffs, which was further broken down into damages awarded to each plaintiff. The trial court also submitted to the jury one form for a finding against all three plaintiffs. Defendant relies on section 1201 of the Illinois Code of Civil Procedure to support his argument that he was entitled to separate verdict forms for each plaintiff. Section 2—1201 states in relevant part:

"(c) If there are several counts in a complaint, counterclaim or third-party complaint based on different claims upon which separate recoveries might be had, the court shall, on the motion of any party, direct the jury to find a separate verdict upon each claim." (735 ILCS 5/2—1201 (West 1992).)

The above language reveals that a party defending against multiple plaintiffs is ordinarily entitled to separate verdict forms as to each plaintiff. The unstated premise underlying the foregoing proposition, however, is that a finding for or against less than all plaintiffs is in

---

[1]The trial court, *sua sponte*, objected to defense counsel's cross-examination of Dr. Bhoopal regarding the ambulance report. The record is not clear as to how defense counsel intended to proceed with this line of cross-examination, namely, whether he planned to have Dr. Bhoopal read the report into evidence. It does appear, however, from the side bar discussion that the trial court had the same reservations about this line of cross-examination as it had about cross-examination concerning the Christ Hospital emergency room records. To the extent that defendant can now claim that he was barred from any cross-examination regarding the ambulance report, he failed to make an offer of proof as to what the line of questioning would have been and, as such, has waived the issue for review.

the realm of possibility. The case before us, as it was tried, negated any such possibility.

■ We first note that defendant in this case admitted negligence. The case was tried on the issues of proximate cause and damages. Moreover, whether the damage sustained to Jager's car was proximately caused by the defendant's admitted negligence, while technically at issue, was not contested at trial. We also believe that the proximate cause as it relates to the claim for loss of consortium naturally flows from any injury to Jager. Looking at the case as it was tried, we see only two issues that merited serious attention. The first issue was the proximate cause of Jager's injury, and the second was what, if any damages, would be awarded to the plaintiffs. The two verdict forms, we believe, adequately addressed these issues. Accordingly, it was not error for the trial court to submit to the jury two verdict forms, rather than the six proffered by defendant.

The defendant's next allegation of error is the trial court's refusal to submit to the jury an Illinois Pattern Jury Instruction concerning impeachment by prior inconsistent statement or conduct. The instruction states:

> "The credibility of a witness may be attacked by introducing evidence that on some former occasion the witness made a statement or acted in a manner inconsistent with the testimony of the witness in this case on a matter material to the issues. Evidence of this kind may be considered by you in connection with all the other facts and circumstances in evidence in deciding the weight to be given to the testimony of that witness." (Illinois Pattern Jury Instructions, Civil, No. 3.01 (2d ed. 1971).)

Defendant argues that the instruction was justified because at trial Jager testified that his neck and head began to hurt before the paramedics arrived at the scene of the accident, but that emergency room records admitted into evidence indicate that Jager made no such complaints when he arrived at the hospital.

■ Because we fail to see anything inherently inconsistent about Jager complaining of pain immediately after the accident and then failing to make the same complaint at a later time and place, we conclude the trial court did not abuse its discretion when it refused to instruct the jury on impeachment by inconsistent statement or conduct.

■ Next, defendant argues that the trial court erred when it refused to grant a mistrial when the plaintiff's attorney repeatedly questioned the defendant regarding insurance despite an order *in limine* barring reference to insurance. Examining the record,

however, it becomes clear that no such questioning took place. The questioning to which defendant objects is as follows:

"Q. Mr. Libretti, we were just talking about the accident and the damage to your vehicle. Now, you told us the damage was around four thousand dollars?

A. Yes.

Q. Isn't it true that the actual damage to your vehicle was five thousand, fifty six dollars and eighteen cents?

A. I would not know that. My insurance company paid the bill."

As can be seen in the colloquy above, plaintiff's counsel did not inject the insurance issue into the trial. Rather, defendant himself volunteered that his insurance company paid the bill. Accordingly, there was no violation of the order *in limine* and no basis for granting a mistrial.

Lastly, defendant argues that the trial court erred in entering judgment in favor of Jager in the amount of $56,283.57, when plaintiff's complaint sought damages not to exceed $15,000. It is clear that judgment may be entered upon a verdict which exceeds the *ad damnum* clause in plaintiff's complaint. (134 Ill. 2d R. 222(a).) Moreover, a plaintiff may move to amend the *ad damnum* clause even after judgment is entered. (735 ILCS 5/2—616(c) (West 1992).) The only issue is whether the defendant will suffer any prejudice as a result of amendment. See 134 Ill. 2d R. 222(a).

■ Defendant claims that it will suffer "inherent prejudice" as a result of judgment being entered on an amount greater than that requested in plaintiff's *ad damnum* clause. It is uncontestable that defendant would suffer the prejudice of having to satisfy a larger judgment by having judgment entered on a verdict greater than that requested by the plaintiff. In this sense, a party is always prejudiced by adverse rulings. The question, however, is whether the party is unfairly prejudiced. Defendant's claim of "inherent prejudice," without referring to what that "inherent prejudice" may be or how that "inherent prejudice" would be unfair, is an insufficient basis for reversal.

While defendant correctly points out that Jager has not moved to amend his complaint, such a motion may properly be made after judgment is entered. (735 ILCS 5/2—616(c) (West 1992).) Moreover, pursuant to Supreme Court Rule 362, a reviewing court may on its own motion order an amendment to the pleadings. (134 Ill. 2d R. 362.) Therefore, pursuant to Supreme Court Rule 362, and in the interest of judicial economy, we hereby consider Jager's complaint amended on its face.

For the foregoing reasons, we affirm the rulings of the trial court and the judgment entered below.

Affirmed.

TULLY and CERDA, JJ., concur.