SHEILA MORRIS, Plaintiff-Appellant and Cross-Appellee, v. SHANNON MILBY, Defendant-Appellee and Cross-Appellant (Aaron Pasbrig, Plaintiff).

Fourth District    No. 4—97—0819

Argued September 22, 1998.—Opinion filed November 16, 1998.

Patricia L. Hayes (argued), of Hayes Law Office, of Springfield, for appellant.

David L. Drake and Matthew D. Bilinsky (argued), both of Drake, Narup & Mead, P.C., of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On May 5, 1992, defendant, Shannon Milby, rear-ended a car in which plaintiff Sheila Morris was driving plaintiff Aaron Pasbrig to school. On December 29, 1993, Morris and Pasbrig sued Milby, seeking

damages for their personal injuries. On, February 5, 1997, a jury returned a verdict in favor of the plaintiffs, who appeal, claiming that errors committed by the trial court prevented them from recovering the full amount of their damages.

Plaintiffs' various assignments of error can be summarized as presenting the following six issues: (1) whether the trial court erred by granting partial summary judgment in favor of defendant as to Morris' lost wages and diminished earning capacity; (2) whether the court abused its discretion by allowing Milby's attorney to cross-examine Morris about a statement she purportedly made to her family physician, even though Milby never completed the impeachment by offering the statement into evidence; (3) whether the court erred by allowing Milby's attorney to cross-examine Morris' treating chiropractor about the contents of medical records that the chiropractor did not use in forming his opinion; (4) whether the court abused its discretion by disallowing Morris' medical records from being sent back with the jury; (5) whether the court abused its discretion by excluding portions of Morris' chiropractic evidence as a discovery sanction; and (6) whether the court abused its discretion by refusing to bar portions of Milby's evidence as a discovery sanction.

Although the plaintiffs' notice of appeal included Pasbrig as an appellant, none of the claims of error pertain to his case. Accordingly, the trial court's judgment is affirmed as to Pasbrig. However, we reverse and remand the court's judgment as to Morris' claim. Because our reversal is based on Morris' first claim of error, we will not address many of the issues she has raised on appeal.

Morris first argues that the trial court erred when it granted Milby's motion for partial summary judgment, thereby precluding Morris from seeking damages for lost wages and diminished earning capacity. We agree.

■ In ruling on a motion for summary judgment, the trial court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and must construe them strictly against the movant and liberally in favor of the nonmoving party. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113, 649 N.E.2d 1323, 1326 (1995). A triable issue of fact, precluding summary judgment, exists when there is a dispute as to material facts or when the material facts are undisputed but reasonable persons might draw different inferences from those facts. In cases involving summary judgment, a reviewing court reviews the evidence in the record *de novo*. *Truman L. Flatt & Sons Co. v. Schupf*, 271 Ill. App. 3d 983, 986, 649 N.E.2d 990, 993 (1995).

■ Milby contends that the record contains no admissible evidence

regarding the loss of a promotion that Morris had been expecting from her employer shortly after the time of the accident. Specifically, Milby claims that Morris' evidence regarding the promotion would be remote and speculative, because Morris never was promised the promotion. Milby then argues that the lack of admissible evidence as to the lost promotion completely precludes Morris from presenting a claim for lost wages or diminished earning capacity.

Milby's argument fails because she isolates one piece of evidence and contests its admissibility, but she never addresses the remaining evidence in the record that supports Morris' claim for lost wages or diminished earning capacity. Thus, we need not address Milby's argument pertaining to the admissibility of the lost-promotion evidence before concluding that summary judgment was improper.

■ Diminished earning capacity measures the difference in the plaintiff's ability to earn money before and after the injury. *Antol v. Chavez-Pereda*, 284 Ill. App. 3d 561, 573, 672 N.E.2d 320, 329 (1996); *Robinson v. Greeley & Hansen*, 114 Ill. App. 3d 720, 726, 449 N.E.2d 250, 254 (1983). Under this definition, the plaintiff need not prove a concrete drop in wages following the injury to claim damages for impaired earning capacity. *Antol*, 284 Ill. App. 3d at 573-74, 672 N.E.2d at 329. Courts have even held evidence of the plaintiff's income to be irrelevant in some circumstances. See, *e.g., Robinson*, 114 Ill. App. 3d at 727, 449 N.E.2d at 255; *Buckler v. Sinclair Refining Co.*, 68 Ill. App. 2d 283, 294, 216 N.E.2d 14, 20 (1966).

Economic testimony is generally not required to prevent summary judgment on the issue of diminished earning capacity. Rather, "the general rule is that the appearance of the plaintiff on the witness stand, [her] testimony as to the nature of [her] injuries and their duration is sufficient to take the question of impaired earning capacity to the jury." *Harris v. Day*, 115 Ill. App. 3d 762, 772, 451 N.E.2d 262, 267 (1983); see also *Patel v. Brown Machine Co.*, 264 Ill. App. 3d 1039, 1061, 637 N.E.2d 491, 505 (1994).

■ In this case, Morris' deposition testimony, which the trial court had before it when it considered Milby's motion for partial summary judgment, provided sufficient evidence to take the question of impaired earning capacity to the jury. Morris testified about the extent of her injuries, including pain she was feeling at work. She described job tasks, such as lifting, that she was unable to do as a result of her injuries. This testimony sufficiently creates a genuine issue of material fact, namely, whether the accident affected Morris' ability to earn money. *Patel*, 264 Ill. App. 3d at 1061, 637 N.E.2d at 505; *Harris*, 115 Ill. App. 3d at 772, 451 N.E.2d at 267. Additionally, the record reflects that Morris missed work as a result of the accident, so it supports a

reasonable inference that Morris lost wages. Milby has not attempted to refute this inference. Accordingly, summary judgment was improper; we reverse the trial court and remand for a new trial limited to the issue of Morris' damages.

The remaining issues that the parties have briefed and argued are not necessary to our disposition of this appeal. However, because several evidentiary issues are likely to resurface on remand, we will address them.

The first of these issues relates to a promotion that Morris claims she lost as a result of the accident. According to Morris' discovery deposition testimony, she was anticipating some changes at the store where she worked around the time of the accident. Prior to the accident, Morris and Kevin Forestier, a coworker, had been slated to do "vendor setups," an activity that would require lifting. They had not begun this activity at the time of the accident. However, doing the vendor setups would make the two employees eligible for a promotion to an assistant manager position. Morris testified that the assistant manager position would be a new position for the company, and it was possible, though not certain, that both she and Forestier could be promoted. Because of the accident and her resulting injuries, Morris was unable to do the vendor setups. Forestier proceeded to do the vendor setups, and he became an assistant manager. Morris was laid off when the store where she worked closed.

Citing *Christou v. Arlington Park-Washington Park Race Tracks Corp.*, 104 Ill. App. 3d 257, 432 N.E.2d 920 (1982), Milby argues that evidence regarding Morris' lost promotion is too speculative, remote, and uncertain to be admitted. We disagree.

■ A plaintiff may present evidence of future earnings that were, prior to the injury, reasonably certain to occur. However, in some situations the future earnings are so uncertain or speculative that evidence of them cannot be admitted. *Christou*, 104 Ill. App. 3d at 260, 432 N.E.2d at 923.

In *Christou*, the plaintiff was unemployed at the time of the accident, but he was in training to become a bartender. In addition, he testified that it was his ambition to eventually become a restaurant owner. *Christou*, 104 Ill. App. 3d at 259-60, 432 N.E.2d at 923. The *Christou* court held that it was proper for the plaintiff to testify about the loss of his expected position as a bartender. However, the court found error in the admission of testimony about restaurant owners' average weekly profits. *Christou*, 104 Ill. App. 3d at 260, 432 N.E.2d at 923. The *Christou* court thereby distinguished between future earnings that are imminent and those that represent a mere ambition of the plaintiff. However, the court did not address the intermediate situ-

ation, when future earnings result from normal career advancement that had not become absolutely certain by the time of the injury.

Subsequent cases establish that absolute certainty is not a prerequisite to admitting evidence of future earnings. In *Exchange National Bank v. Air Illinois, Inc.*, 167 Ill. App. 3d 1081, 1085-86, 522 N.E.2d 146, 148-49 (1988), the court upheld the admission of testimony that a decedent in an airplane crash could have advanced from her position as a union business agent to become the president of a local union, even though the change would take several years and probably require multiple promotions. In a different case, the court allowed evidence that a different victim of the same accident, a university professor with administrative responsibilities, eventually would have become dean of a university. *Lorenz v. Air Illinois, Inc.*, 168 Ill. App. 3d 1060, 1064, 522 N.E.2d 1352, 1355 (1988). These cases distinguish between a plaintiff's mere ambition and a "goal which [plaintiff] had the ability to attain." *Lorenz*, 168 Ill. App. 3d at 1064, 522 N.E.2d at 1355.

■ After reviewing *Christou* and its progeny, one court summarized the standard for admitting testimony about possible job advancement as follows:

"Once it has been established with reasonable certainty that [plaintiff] would have experienced job advancement, then the speculative nature of testimony regarding the commensurate increases in pay is decreased to a point that its admission is not error. [Citation]. Without such evidence, testimony regarding future earnings based solely upon the [plaintiff's] ambition is speculation and inadmissible." *Carlson v. City Construction Co.*, 239 Ill. App. 3d 211, 230-31, 606 N.E.2d 400, 411 (1992).

■ On this record, Milby's reliance on *Christou* is misplaced. Morris did not propose to testify solely about an assistant manager's salary. Rather, the contested evidence would have established with reasonable certainty that Morris would have experienced job advancement. Specifically, Morris would have testified that she was one of only two people being considered for this particular promotion and that her employer had concrete plans for her to begin doing work that would qualify her for the promotion. This testimony establishes that the promotion "was not merely an 'ambition' of [Morris], but rather a goal which [she] had the ability to attain." *Lorenz*, 168 Ill. App. 3d at 1064, 522 N.E.2d at 1355. Thus, nothing in *Christou* or its progeny forbids the admission of the testimony.

Morris also claims that she was improperly impeached as a witness. During cross-examination, Milby's attorney attempted to impeach Morris using statements that Morris purportedly made to her family physician years before the accident, but he never completed the

impeachment by offering the statements into evidence. We agree with Morris that Milby's attempted impeachment was improperly executed, although we note that this error would not independently warrant a new trial.

■ Impeachment through the use of a prior inconsistent statement must be completed by later offering evidence of the inconsistent statement if the witness denies making it. *Hackett v. Equipment Specialists, Inc.*, 201 Ill. App. 3d 186, 197, 559 N.E.2d 752, 759 (1990). The same rule applies when the witness gives equivocal answers to questions about the prior statement (*Rigor v. Howard Liquors, Inc.*, 10 Ill. App. 3d 1004, 1009, 295 N.E.2d 491, 495 (1973)) or when the authenticity of the prior statement is at issue (*Bradford v. City of Chicago*, 132 Ill. App. 3d 317, 324, 476 N.E.2d 1221, 1226 (1985)).

During Morris' cross-examination, the following exchange took place:

"Q. [Milby's attorney:] And you went to a doctor in 1988, Dr. Carol, your family physician, and told him you had pain in the head, neck pain and radiating down the arm, didn't you?

A. I told him I had *chest pain* and it was radiating, yes, sir.

\* \* \*

Q. Did you tell Dr. Dennis Carol in 1988 that you had complaints of dull headache radiating down into [the] neck and also down into [your] chest and arm?

A. I don't remember what I told him." (Emphasis added.)

After handing Morris a copy of the doctor's records, which were not in evidence, Milby's attorney continued:

"Q. \*\*\* After reviewing that, does that refresh your recollection that you told Dr. Carol you had headache, dull headache down your neck and [with pain] radiating down your arm in May of 1988? Does that refresh your recollection you told him that?

A. *That's not what it says*." (Emphasis added.)

■ Thus, Morris' responses gave rise to the cross-examining attorney's obligation to complete impeachment. During the attempted impeachment, Morris (1) answered equivocally, by stating she did not remember what she had told her doctor; and (2) questioned the authenticity of the cross-examining attorney's reading of the medical records. Since Milby's attorney never completed the impeachment by offering the records into evidence, this attempted impeachment was improper. *Rigor*, 10 Ill. App. 3d at 1009, 295 N.E.2d at 495.

Although we conclude that the impeachment attempt was improperly executed, we note that this error would not independently provide a basis for reversal because Morris forfeited her claim of error. A party who claims to be prejudiced when a prior inconsistent state-

ment is introduced but never authenticated must object at the time the statement is introduced and then preserve the objection by making a timely motion to strike when the opposing party fails to offer extrinsic evidence of the statement. *Gillespie v. Chrysler Motors Corp.*, 135 Ill. 2d 363, 373, 553 N.E.2d 291, 296 (1990). Here, Morris objected when the prior inconsistent statements were first used but never moved to strike the testimony. Thus, she forfeited this claim of error.

Morris next argues that the trial court abused its discretion when it allowed Milby's attorney to cross-examine her treating chiropractor about the contents of another doctor's medical reports after the treating chiropractor had testified that he had not relied upon those reports in forming his opinion. We agree.

■ In *Wilson v. Clark*, 84 Ill. 2d 186, 192-95, 417 N.E.2d 1322, 1326-27 (1981), the supreme court held that the contents of medical records form a hearsay exception when they are used during the examination of an opinion witness who relied upon them. However, the court did not discuss the records' admissibility when the opinion witness did not rely upon them in forming his opinion.

This latter question was addressed in *People v. Pasch*, 152 Ill. 2d 133, 179-80, 604 N.E.2d 294, 312-13 (1992), and the supreme court declined to extend the hearsay exception from *Wilson* to medical reports that the opinion witness did not rely upon in forming his opinion. However, the court did allow for limited, nonhearsay use of the reports. Specifically, an attorney may use the reports to probe the basis of the witness' opinion. In fact, cross-examination may even include hypothetical questions designed to determine what effect the other doctors' conclusions, if correct, would have on the testifying witness' opinion. However, questions seeking to introduce the reports' contents or conclusions as substantive evidence violate the prohibition against hearsay. *Pasch*, 152 Ill. 2d at 178-80, 604 N.E.2d at 312-13.

In *Jager v. Libretti*, 273 Ill. App. 3d 960, 965-67, 652 N.E.2d 1120, 1124 (1995), the appellate court illustrated the difference between the proper and improper use of medical reports upon which the opinion witness did not rely. The following line of questioning improperly seeks to introduce the hearsay contents of a medical report as substantive evidence:

"'Q. Doctor, in terms of medical terminology and report: [w]hen you see a circle with a line through it, that means, negative, correct?

A. That's correct.

Q. And, Doctor, calling your attention to the eighth line down on the physician's record; [i]sn't there a notation with a circle and a line through it as to neck discomfort?

A. That's correct.' " *Jager*, 273 Ill. App. 3d at 965, 652 N.E.2d at 1124.

However, the following question, makes proper nonhearsay use of the same report:

" 'Q. Okay, Doctor, if you would have known at the time that you based your diagnosis and treatment of the plaintiff that, in fact, at the time of the emergency room, that plaintiff made no complaint of neck injuries and no indication of neck tenderness; Would that affect your opinion in any way?

A. No, it would not.' " *Jager*, 273 Ill. App. 3d at 965, 652 N.E.2d at 1124.

In the case at bar, the treating chiropractor (Dr. Louis Distasio) testified that he had not relied upon the records from Morris' family physician (Dr. Dennis Carol), so the *Wilson* hearsay exception cannot apply to Carol's records. *Pasch*, 152 Ill. 2d at 178-80, 604 N.E.2d at 312-13. Nevertheless, the trial court allowed Milby's attorney to ask the following questions:

"Q. [Milby's attorney:] And you saw in Dr. Carol's records that he had diagnosed the same thing, muscle contraction headaches, in 1988, correct?

* * *

Q. Probable muscle contraction headaches. Is that what it says in the record? Am I reading that correctly?

* * *

Q. On June 18th, 1992, a little over a month after the accident, Sheila saw Dr. Carol; is that correct?

A. Yes.

Q. And at that time, Dr. Carol examined her neck and found it unremarkable. He examined other things, but he also examined her neck and found it unremarkable, correct?"

These questions seek to introduce the reports' contents as substantive evidence, in violation of the hearsay rule. It was error to allow them.

Because we are reversing on other grounds, we need not address whether the prejudice committed by admitting these questions is independently sufficient to warrant reversal.

We decline to review the merits of Morris' remaining claims, because we conclude they are unlikely to resurface on remand. However, to avoid unnecessary prejudice, we vacate the trial court's order imposing discovery sanctions on Morris. An important factor for the trial court to consider in determining whether to issue discovery sanctions is the unfair surprise resulting from the discovery violation. *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 124, 692 N.E.2d 286, 291 (1998). Milby claims that she was unfairly surprised because Morris disclosed certain chiropractic records on the eve of trial.

However, that unfair surprise, assuming it was genuine, no longer exists since Milby now has the records and trial must be set anew. Thus, we vacate the court's sanction order, and we further direct the trial court to set a new discovery schedule on remand to prevent further problems.

In conclusion, we affirm the trial court's judgment in Pasbrig's claim, reverse the court's order granting partial summary judgment against Morris regarding her claim for lost wages and diminished earning capacity, vacate the discovery sanctions imposed against Morris, and remand for a new trial limited to the issue of Morris' damages.

Affirmed in part and reversed in part; cause remanded.

KNECHT and COOK, JJ., concur.