FOURTH DIVISION

Filed May 30, 2002

No. 1-01-1206

MILDRED RIOS, )    Appeal from

) the Circuit Court

Plaintiff-Appellant, ) of Cook County.

) 

)  

) 

v. )  No. 97 L 3672 

)

THE CITY OF CHICAGO, )  

)   

Defendant-Appellee. )     Honorable

)   Allen Freeman,

)  Judge Presiding.

JUSTICE THEIS delivered the opinion of the court:

Plaintiff, Mildred Rios, brought suit against defendant, the City of Chicago (The City), for injuries she sustained when she slipped and fell on ice which accumulated on an alley return located in Chicago.  The jury returned a verdict in favor of defendant.  On appeal, plaintiff contends that she was entitled to a judgment notwithstanding the verdict.  Alternatively, she argues that the trial court erred in allowing the jury to hear inadmissable evidence for which no limiting instruction was given, and erred in refusing plaintiff's jury instructions regarding unnatural accumulation and disfigurement.  For the following reasons, we reverse the judgment of the circuit court and remand for a new trial.

Plaintiff testified that on March 23, 1992, she was on her way to work, walking north on the sidewalk along Halsted Street toward the intersection of Halsted, Fullerton, and Lincoln Avenue in Chicago.  The sidewalk was clear and there was salt on the ground.  At one point, the sidewalk stopped at the entrance to an alley and resumed on the other side of the entrance.   Crossing the alley in place of the sidewalk was an "alley return" - a concrete surface spanning the entrance to the alley that was sloped toward the intersecting street.  When plaintiff came upon the alley, she looked to her right to check for cars.  As she was looking for cars, she took one or two steps into the alley and slipped and fell.  She heard a loud crack in her right arm.   After she fell she looked on the ground to see what caused her to fall.  She stated that she saw broken cement with ice on top of it "right where she fell."  Based upon photographs introduced at trial, she described the area in which she fell as being towards the middle of the alley.  The photographs depict her pointing to the area with the broken concrete.  She further testified that Donna Seltin had been walking behind her, helped her to her feet, and took her to the hospital.  She was treated for a dislocated and fractured elbow, which ultimately required surgery.  On cross-examination, she testified that before she fell, she never noticed anything unusual about the sidewalk or alley return where she fell.

Herbert Miller testified as plaintiff's structural engineering expert.  He testified that naturally occuring weather conditions caused the concrete to "spall" or break up because the concrete naturally absorbs water.  When the water freezes, it expands and the concrete surface gets pushed off by the expansion of the ice, creating a pockmarked or broken area.  The spalled condition took several years to develop.  He also noticed signs that somebody at some time had cut an area of the concrete and patched it.  When asked whether the spalled condition caused an unnatural accumulation of ice to develop, Miller stated that the water came from a natural source, either from rain or melted snow, and that the slope of the alley return would normally allow for a proper run-off of that water.  However, the spalling acted as a reservoir  for the water to collect and freeze on the slope and created a dangerous condition.  Miller reviewed the photographs, the weather report, and the depositions of plaintiff and Kenneth Rigan, the general superintendent of the bureau of streets for the City of Chicago.  Miller further testified that prior to rendering his opinions he did not believe that he reviewed the deposition testimony of Donna Seltin.  He was not aware that Seltin had testified that on the date of the accident she was walking behind plaintiff and that a sheet of ice covered the street and sidewalk.  The highest temperature on the day of the accident was 31 degrees, after a low of 17 degrees the previous night.  Ten inches of snow had fallen during the two previous days.  

Kenneth Rigan testified that as part of his duties, he was responsible for the maintenance of the sidewalks and alley returns in the City.  He agreed that one purpose of an alley return is to allow water to flow to the gutters into the catch basins or sewers, and that the alley is angled so that water does not collect on the return.  He also agreed that if the alley return becomes broken or pockmarked, water could pool in those areas.  He also testified that the concrete surface plaintiff points to in the photographs was likely laid to cover a trench that had been dug and refilled by a utility company.  It appeared to Rigan that workers employed by the company most likely dug the trench, refilled it, and laid the concrete surface.  He admitted, however, that the City had control over the alley return where plaintiff fell.  

Steven Zebich testified as defendant's structural engineering expert.  He stated that he was also trained in meteorology.  In formulating his opinions, he reviewed the complaint, the depositions of plaintiff, Rigan, Seltin, and Miller, a series of photographs, weather data, and also reviewed an inspection report of the site.  He testified that based upon the information provided by Rigan, and the site inspection, the condition of the concrete where plaintiff alleged she fell was probably related to the trench work done by the utility company.  Additionally, he stated that the deterioration in the concrete was a result of normal long-term freeze-thaw action, which can cause parts of the surface to crack and spall over time.  In his opinion, the ice that developed on the concrete was due to a natural accumulation.  His opinion was based upon various factors identified by his company: (1) whether there is a source for creating an unnatural accumulation of ice; (2) whether there is a potential for discharge of water from that source to create an unnatural accumulation; and (3) whether the topography around the area supports drainage from the source to the point of alleged accumulation.  He explained that a source of an unnatural accumulation of ice is "a man-made object, a structure, some kind of thing that's built * * * that would channel quantities of water onto a spot in excess of common ground flow."  He further explained that simply because water puddles on a man-made surface does not mean that it is there unnaturally; it is a normal, expected collection of water along a common ground surface.

  Zebich also testified that based upon the testimony of Seltin and the weather data, it was his opinion that the location where plaintiff states she fell was covered with ground surface ice or "black ice."  He stated that Seltin's testimony aided him in formulating his opinion because she testified in her deposition that it was actively sleeting, that there was ice everywhere, that she was walking on the snow and that it was crunching.  However, he also relied upon the weather information available from the Chicago Botanical Garden, the University of Chicago, and O'Hare Airport.  That information disclosed that on the day of the accident, there was no reported precipitation.  However, two days prior, there was a total accumulation reported of 10 inches of snow.  In addition to that, fog, rain, blowing snow, or drizzle was occurring, and the relative humidities at all the locations were high, which meant that the air was very moist.  Temperatures fluctuated above and below freezing.  This combination created a classic situation for creating fog, and ground surface icing conditions, including on sloped surfaces.  Accordingly, based upon the porous nature of concrete and the weather conditions, it was his opinion that water could have collected throughout the entire alley return.  Zebich did not personally inspect the area where plaintiff fell.  He agreed that, generally, the alley return was designed for safety purposes to prevent large quantities of water from remaining there and freezing.  

Evidence was also introduced that the City had a hotline for handling city complaints.  The City had not received any complaints of any defects in the alley way of 2300 North Halsted Street during the period beginning one year before the accident and ending one month after the accident.  At the close of the evidence and after closing arguments, the jury was instructed on the law and was asked to answer four special interrogatories as follows:

(1) "Were the alley return and sidewalk where Plaintiff Mildred Rios alleges she fell in reasonably safe condition on March 23, 1992?"

(2) "Did the City of Chicago have actual or constructive notice of [a] condition that was not reasonably safe at the location where the Plaintiff Mildred Rios alleges she fell, on March 23, 1992, in sufficient time to have remedied the condition prior to the date of Plaintiff Mildred Rios' fall?"

(3) "Was the natural accumulation of ice or snow the sole proximate cause of Plaintiff Mildred Rios' injuries?"

(4) "Was the negligence of Mildred Rios greater than 50% of the total proximate cause of her injuries?"

The jury returned a general verdict for defendant, answered "yes" to the first and third special interrogatories, and "no" to the second and fourth special interrogatories.  Plaintiff's posttrial motion for a judgment notwithstanding the verdict or for a new trial was denied.

Plaintiff initially contends that the trial court erred in denying her motion for a judgment notwithstanding the verdict.  Specifically, she argues that had the court properly set aside the unreliable and inadmissible hearsay testimony of Seltin, the incontrovertible evidence established that plaintiff was entitled to a judgment in her favor.  A judgment notwithstanding the verdict should not be granted unless the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could possibly stand.  
McClure v. Owens Corning Fiberglas Corp.
, 188 Ill. 2d 102, 132, 720 N.E.2d 242, 257 (1999).  In making this assessment, a reviewing court must not substitute its judgment for the jury's, nor may a reviewing court reweigh the evidence or determine the credibility of the witnesses.  
McClure
, 188 Ill. 2d at 132, 720 N.E.2d at 257.  The denial of a motion for judgment notwithstanding the verdict is reviewed 
de
 
novo
. 
McClure
, 188 Ill. 2d at 132, 720 N.E.2d at 257.

It is well settled that a municipality is not liable for the condition of its property caused by the natural accumulation of ice and snow, provided the area is properly constructed and no other defect is shown.  745 ILCS 10/3-105(a)(West 1998); 
Davis v. City of Chicago
, 8 Ill. App. 3d 94, 96-97, 289 N.E.2d 250, 252 (1972).  If, however, a slippery condition is combined with a defect in the property that is not reasonably safe, liability may be imposed if the defect is found to be a proximate cause of the injury, and the municipality had proper notice of the condition.  See 745 ILCS 10/3-102(a), 10/3-105(a)(West 1998); 
McCann v. Bethesda Hospital
, 80 Ill. App. 3d 544, 549, 400 N.E.2d 16, 19 (1979); 
Davis
, 8 Ill. App. 3d at 97, 289 N.E.2d at 252.  "[T]he defect as a proximate cause is essential, and recovery will be denied when an accident is caused solely by a naturally icy surface."  
Davis
, 8 Ill. App. 3d at 97, 289 N.E.2d at 252; 745 ILCS 10/3-105(a)(West 1998).  Thus, in the present case, plaintiff had the burden to prove that the spalled concrete on the slope of the alley return caused an unnatural accumulation of ice which was not reasonably safe, that the City had proper notice of the condition, and that as a proximate cause of the dangerous condition, plaintiff was injured.

Here, at trial plaintiff presented some conflicting evidence as to the location where she fell.  While she introduced photographs of herself and pointed to the spalled concrete area in the middle of the alley return as the place where she fell, her testimony was that she fell when she took one or two steps off the curb into the alley.  Based upon the photographs, the spalled concrete area was several feet from the point where the sidewalk met the alley.  Thus, plaintiff's credibility was in question, and the jury could have found that the complained-of condition of the alley return was not the proximate cause of her injury.  

Moreover, defendant's expert opined that based upon the porous nature of concrete and given the weather data available, plaintiff fell due to a natural accumulation of ground surface icing.  Thus, without the complained-of deposition testimony of Seltin, there was other evidence introduced from which the jury could have found that the accident was solely caused by a naturally icy surface.  Accordingly, the trial court properly denied plaintiff's motion for a judgment notwithstanding the verdict.

Plaintiff next contends that the trial court erred in making various evidentiary rulings regarding the inadmissible deposition testimony of Donna Seltin.  Initially, defendant maintains that plaintiff has waived these errors for failing to contemporaneously object to them at trial and for failing to make proper objections.  Upon review of the record, we find that plaintiff made sufficiently timely and appropriate objections, repeating her assertion that the deposition could not be used as substantive evidence at trial and requesting a limiting instruction on that basis.  Accordingly, we choose to address the merits of her argument.  

Seltin testified in her discovery deposition that she was walking about a block behind plaintiff on the morning of her fall.  She stated that there was ice all over the ground and it was actively sleeting.  Prior to trial, Seltin died.  Plaintiff filed a motion
 in limine
 to bar defendant from introducing her deposition testimony at trial for any purpose.  While the deposition testimony was inadmissable as substantive evidence, defendant argued that it was allowable for the purpose of explaining the basis of its expert's opinion and to impeach plaintiff's expert.  The trial court denied plaintiff's motion
 in limine
, and allowed defendant to use the testimony throughout the trial as requested.

Initially, we address plaintiff's contention that the trial court erred in allowing defendant to use Seltin's deposition testimony during its direct examination of Zebich.  Defendant argued before the trial court that these facts were admissible under 
Wilson v. Clark
, 84 Ill. 2d 186,  417 N.E.2d 1322 (1981), as forming the basis of its expert's opinion.  In 
Wilson v. Clark
, our supreme court specifically adopted Federal Rule of Evidence 703 (Fed. R. Evid. 703), allowing experts to give opinion testimony based upon information which has not been admitted into evidence, as long as the facts relied upon are "'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.' "  
Wilson
, 84 Ill. 2d at 193-96,  417 N.E.2d at 1326-27, quoting Fed. R. Evid. 703.  The court explained that if the trial court determined that the underlying facts were of the sort reasonably relied upon by experts in forming opinions, the expert could reveal the facts, not as substantive evidence, but for the limited purpose of explaining his opinion. 
City of Chicago v. Anthony
, 136 Ill. 2d 169, 185-86, 554 N.E.2d 1381, 1389 (1990).  

Thus, the proponent of the evidence must convince the trial court that the information is of the type customarily relied upon by experts in the field, and that such information is sufficiently trustworthy to make such reliance reasonable.  
Anthony
, 136 Ill. 2d at 186, 554 N.E.2d at 1389; 
Bloome v. Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, P.C.
, 279 Ill. App. 3d 469, 476, 664 N.E.2d 1125, 1130 (1996).  Here, during the direct examination of Zebich, the following exchange took place over plaintiff's objection:

"Q. * * *  Could you tell us how Ms. Sultan's testimony aided you in formulating your opinions?

A. Well, Ms. Sultan was an eyewitness.  She was walking behind Ms. Rios at the time of the accident, though I think she said she didn't fall, but she gave a very detailed description of the environment at that time.  She indicated it was actively sleeting,
  that there was ice on sidewalks and streets.  I think she said ice
 everywhere, and that there was snow.  Snow was not that terrible south of the alley return.  She talked about walking on the snow and it was crunching, you know how the top surface freezes and below it [is] soft.  She [
sic
] talks about walking on the snow and it was crunching and it had been removed or cleared further down but there generally was ice along the ground surfaces."
   

Applying the above principles to the facts in the present case, we find that it was error for the trial court to allow Zebich to rely on and disclose to the jury Seltin's statements about the icy and sleeting weather conditions at the time of the occurrence.   Defendant failed to lay any foundation as to whether such hearsay is customarily relied upon in rendering opinions in the expert's field and, more importantly, whether such reliance was reasonable.  Indeed, plaintiff's expert found eyewitness statements about the weather conditions were not sufficiently reliable in formulating his opinions in this case.  

It was imperative for the trial court to require a proper foundation be established for this type of evidence as emphasized in the advisory committee's note to Rule 703.  Therein, the committee indicates that reliance is reasonable only if the facts, data, or opinions possess an indicia of trustworthiness in excess of that possessed by the ordinary hearsay statement.  Fed. R. Evid. 703, 28 U.S.C., Notes of Advisory Committee (2000) (opinion of an "accidentologist" as to the point of impact in an automobile collision based on statements of bystanders precluded under reasonable reliance provision.)  See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §703.1, at 647 (7th
 ed. 1999) ("The statement by a bystander, a person under no business duty to report, possessing no indicia of trustworthiness beyond that possessed by hearsay statements at large, may not reasonably be relied upon by the expert").  Accordingly, it was error for the trial court to admit this evidence without the appropriate foundation.   
 

Additionally, a trial judge need not allow an expert to recite inadmissible evidence when its probative value in explaining the opinion is outweighed by its likely prejudicial impact or tendency to create confusion.  
People v.
 Anderson
, 113 Ill. 2d 1, 12, 495 N.E.2d 485, 490 (1986).
  Here, the risk of confusion and prejudice was amply demonstrated where defendant specifically argued the contents of Seltin's deposition testimony and statement as substantive evidence in opening and closing argument despite repeated assertions that it would not use the evidence for an improper purpose.  During opening argument, defendant made the following remarks to the jury:  

"You're going to hear testimony that the streets and the sidewalk where she fell was a sheet of ice.  You will hear that at that location there was hardly an area that was not covered by ice.  You will also hear that at that location it was sleeting at that time and it was while she was walking over such an area covered by ice that she slipped and fell."

Thereafter, in closing argument, defense counsel made the following statement to the jury:

"It's not the unnatural accumulation which caused the fall.  It was the ice, ice that her friend, the woman who helped her, Donna Sultin, said was everywhere, ice that was all over including that first step into the alley.  That ice, ladies and gentleman, the City is not responsible for."

Compounding this error, the trial court failed to give a limiting instruction, upon request, that the evidence was admissible only for the limited purpose of explaining and testing the basis of the experts' opinions and not admissible as substantive evidence.    See, 
e.g.,
 
Anderson
, 113 Ill. 2d at 12, 495 N.E.2d at 490 (limiting instruction should be given to forestall any misuse of Rule 703); 
People v. Pasch
, 152 Ill. 2d 133, 177, 604 N.E.2d 294, 311 (1992).

We cannot say that these errors would not have impacted the outcome of the case where the jury was left to believe that Seltin's deposition testimony was introduced for the truth of the matter asserted, where the testimony was directly related to one of the ultimate issues in the case, and where the testimony was contradicted by plaintiff and the weather reports entered into evidence regarding a lack of precipitation on the date of the occurrence.     

In a related argument, plaintiff contends that the trial court also erred in allowing defendant to impeach her expert with the deposition testimony of Seltin as an additional attempt to admit the otherwise inadmissible testimony as substantive evidence, relying on 
Jager v. Libretti
, 273 Ill. App. 3d 960, 652 N.E.2d 1120 (1995), in support.  In 
Jager
, as in the present case, the court dealt with the difficult situation where the cross-examiner attempted to add facts, rather than subtract or alter those facts upon which the expert actually relied, to test the expert's expertise, knowledge, fairness, and basis of his opinion.   The court considered whether an expert could be cross-examined regarding records that he neither relied upon nor reviewed in forming his opinion.  The court cited 
Pasch
 for the proposition that an expert may be cross-examined regarding materials he neither reviewed nor relied upon, if the cross-examination is for the limited purpose of impeaching the expert by asking whether other facts, data, or opinions and conclusions would alter his opinion.  
Jager
, 273 Ill. App. 3d at 964, 652 N.E.2d at 1123.    

Additionally, if the fact, data, or opinion that the cross-examiner seeks to add to the expert's basis has been or will be otherwise introduced in evidence, or is contained in a learned treatise, cross-examination is proper.  Similarly, if the additional fact, data, or opinion has been or reasonably
 will be relied upon under Rule 703 by an expert called as a witness by the cross-examiner during his case in chief, cross-examination is proper.  See generally 
Pasch
, 152 Ill. 2d at 179-80, 604 N.E.2d at 312-13.  However, facts, data, or opinions that have not been reviewed by the expert, are not properly admitted in evidence, nor reasonably relied upon by another expert in testimony at trial, may not be employed to impeach the expert's opinion.  M.  Graham, Cleary & Graham's Handbook of Illinois Evidence §705.2, at 699 (7th
 
ed. 1999).

Here, defendant was permitted, over objection, to cross-examine plaintiff's expert during his evidence deposition about the contents of Seltin's discovery deposition in an effort to attack his credibility and the basis of his opinions.  Specifically, defendant asked Miller if he was aware that Seltin testified that on the date of the accident she was walking behind plaintiff, that a sheet of ice covered the street and sidewalk, and that she could not recall any area that was not covered by ice.  Miller responded that he was not aware of that testimony, and did not recall reviewing Seltin's deposition prior to formulating his opinions.  He did not find such eyewitness testimony to necessarily be an accurate indicator of weather conditions at a specific location.

        W
e find that the hearsay statements were not properly used as impeachment but, rather, "as a Trojan Horse used to slip hearsay evidence into the trial."  
Jager
, 273 Ill. App. 3d at 966, 652 N.E.2d at 1124.  Here, the record reflects that Miller had neither relied upon the hearsay statements of Seltin nor reviewed her deposition testimony prior to rendering his opinions.  Defense counsel failed to ask Miller whether Seltin's statements, that it was icy all over and sleeting, would have altered his opinions, thereby failing to perfect the impeachment.  Where the statements were otherwise inadmissible and, as previously stated, no foundation was layed to support a reasonable reliance by another expert at trial, it was an abuse of discretion to allow the statements to be admitted for the purpose of impeachment on cross-examination.

Accordingly, where the trial court erred in admitting evidence without a proper foundation, where the trial court failed to provide the jury with an appropriate limiting instruction on that evidence, where defendant improperly argued the evidence substantively both in opening and closing argument, and where the testimony introduced went to one of the ultimate issues in the case, we find these errors to be sufficiently prejudicial to warrant reversal and remand for a new trial.

Despite these errors, defendant maintains that it is nevertheless entitled to a judgment in its favor because (1) the jury found the alley return was in a reasonably safe condition; (2) plaintiff failed to prove that the condition of the alley return was the proximate cause of her accident; (3) there was no actual or constructive notice of the ice patch as a matter of law; and (4) the defect was 
de
 
minimis
.  We find these arguments not well taken.   

It is true that the jury found the property to be in a reasonably safe condition.  However, we cannot say that Seltin's testimony, which supported the opinion that plaintiff fell from a natural accumulation of ice during sleeting conditions, did not impact the jury's ultimate determination that the property was reasonably safe.  Contrary to defendant's assertion, it could be the case that, without Seltin's testimony, the jury might have found that the condition of the alley return caused an unnatural accumulation of ice and, therefore, could have concluded that the alley return was not in a reasonably safe condition. 

With respect to proximate cause, defendant argues that plaintiff was not looking in the direction she stepped, but was looking for oncoming traffic, and that she did not notice the ice patch before she fell.  However, plaintiff also testified that it was a clear day, that the sidewalk was clear, that as soon as she fell, she looked on the ground to see what caused her to fall, and saw the broken cement with ice on top of it "right where she fell."  We find that this testimony was sufficient for the jury to establish a causal connection between her fall and the condition of the sidewalk.  Compare 
Canzoneri v. Village of Franklin Park
, 161 Ill. App. 3d 33, 39, 513 N.E.2d 1103, 1107 (1987)(summary judgment reversed where plaintiff could point to an identifiable defect of a broken sidewalk moving under her feet), with 
Barker v. Eagle Food Centers, Inc.
, 261 Ill. App. 3d 1068, 634 N.E.2d 1276 (1994)(summary judgment granted where plaintiff claimed she fell on a wet floor, but failed to notice whether there was water on the floor before or after her fall or whether her clothes were wet after she fell).  We further find defendant's cited case of 
Siegel v. Village of Wilmette
, 324 Ill. App. 3d 903, 908, 756 N.E.2d 316, 320 (2001), to be merely 
dicta
 in the context of a holding regarding the 
de minimis
 rule and constructive notice.

We further reject defendant's argument that it was entitled to judgment as a matter of law because there was no evidence that the City received notice of the ice patch.  Initially, defendant's argument is misplaced.  Plaintiff was required to prove notice of the defective condition, 
i.e.
, the spalled concrete on a sloped alley return which would allow precipitation to remain and not flow properly into the sewer system, and not the unsafe nature of the condition, 
 i.e.
, that the particular ice patch formed causing her to fall.  
Vacala v. Village of La Grange Park
, 260 Ill. App. 3d 599, 614, 636 N.E.2d 812, 822 (1994).  While there was no testimony to support actual notice, Miller testified that precipitation would collect in spalled concrete and freeze, and that the spalled condition had been present for probably 6 to 10 years.

Lastly, while defendant argues that the defect was 
de minimis
, and therefore not actionable as a matter of law, there is no bright-line test for determining the point at which a defect becomes actionable.  Rather, it is well settled that each case must be decided on its own particular facts and circumstances.  
Warner v. City of Chicago
, 72 Ill. 2d 100, 104, 378 N.E.2d 502, 503 (1978); 
Ramirez v. City of Chicago
, 318 Ill. App. 3d 18, 25, 740 N.E.2d 1190, 1195 (2000).  Based upon the photographs presented, we cannot say that the spalled area was 
de minimis
 as a matter of law; rather, it was a factual determination left to the province of the jury.

In sum, none of defendant's assertions cure the prejudicial evidentiary problems that arose during the trial of this matter and plaintiff is entitled to a new trial on that basis.  While we make no comment on what the evidence will be on retrial, we briefly address plaintiff's other contentions to the extent that they may arise again on remand.  Plaintiff argues that the trial judge erred in giving defendant's proffered version of Illinois Pattern Jury Instructions, Civil, No. 125.04 (2000)(hereinafter IPI Civil) over plaintiff's proposed version of the IPI instruction because it was misleading, confusing, and did not include conditions which the law recognizes as a potential source for an unnatural accumulation.  A particular jury instruction given by the trial court is proper if it is sufficiently clear, fairly and correctly states the law, and is supported by some evidence in the record.  The trial court has discretion in deciding which issues are raised by the evidence.  
Villa v. Crown Cork & Seal Co.
, 202 Ill. App. 3d 1082, 1088, 560 N.E.2d 969, 972  (1990).  

The issue arises here in a highly fact-specific context.  While we cannot say what evidence will be presented on remand, we note that by its very nature, IPI Civil No. 125.04 requires the trial court to determine what facts in the case will establish an unnatural accumulation of ice giving rise to a duty, and which facts will establish a natural accumulation of ice.  The examples given by the committee are "not intended to represent any opinion by the committee as to what the law is or should be or as to the exact language for instructing the jury in any given case."  IPI Civil No. 125.04, Notes on Use
 (2000).  Therefore, on remand, it will be for the trial court to determine the appropriate language that defines the disputed issue in the case.

Lastly, plaintiff contends that the trial court erred in refusing her proposed instruction and life-table testimony on the basis of plaintiff's permanent disfigurement.  The term "disfigure" means "to make less complete, perfect, or beautiful in appearance or character."  Webster's Third New International Dictionary 649 (1986).  Again, on remand, depending upon the evidence presented, the trial court will determine in its discretion whether there is so\me evidence to support that definition.  

Accordingly, for the foregoing reasons, we reverse and remand this cause for a new trial.

Reversed and remanded.

THEIS, J., with HOFFMAN, P.J., and HARTMAN, J., concurring.