2020 IL App (1st) 192087-U

SIXTH DIVISION
October 23, 2020

No. 1-19-2087

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| KATHLEEN SCHNUR, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17 L 006087 |
| | ) | |
| RARO LAWN SERVICE, INC., | ) | |
| | ) | Honorable Allen P. Walker, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Griffin concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Circuit court properly granted summary judgment for snow and ice removal contractor where the contractor did not breach its duty as set out in contract; affirmed.

¶ 2    Plaintiff, Kathleen Schnur, appeals an order of the circuit court that granted summary judgment to defendant, Raro Lawn Service, Inc. On appeal, plaintiff contends that summary judgment was improper because whether a defendant breached its duty is a question of fact, and

moreover, defendant breached its contractual or voluntarily assumed duty of care that it owed to plaintiff. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       Plaintiff's second amended complaint alleged as follows. On January 16, 2017, plaintiff slipped and fell on an accumulation of ice in the parking lot of her employer, Suburban Surgical Co., Inc. (Suburban Surgical), which was located at 275 12th Street in Wheeling, Illinois. Previously, Suburban Surgical had entered into a snow and ice removal contract with defendant. The contract was for the benefit, safety, and protection of employees of Suburban Surgical. Plaintiff also relied on defendant to remove snow and ice from the employee parking lot. On the date of the fall, defendant failed to exercise reasonable care in the performance of its contract and its misfeasance increased the risk of harm to plaintiff. In part, defendant: 1) made improper inspections of the parking lot; 2) allowed ice to form in the employee parking lot; 3) failed to exercise ordinary care in the removal of ice from the employee parking lot; 4) failed to provide ice removal services; 5) failed to spread or apply salt in an appropriate fashion; 6) failed to appropriately monitor the weather to determine if salt was necessary; 7) failed to recognize or completely disregarded a National Weather Service advisory warning of freezing rain; and 8) failed to apply anti-icing and deicing materials. Plaintiff was injured as a result of defendant's negligence.

¶ 5       The record contains the snow and ice removal contract, which was in effect on January 16. Under the contract, the following services were included: "Shoveling sidewalk," "Salting Business Driveway," "Clearing Parking," and "Plowing Drives." The costs of salting the business driveway were $250 and $270. A corresponding document from defendant stated, "Just for price in ton of salt dec. & jan. is $250.00. Feb. & mar. $270.00."

¶ 6    Defendant moved for summary judgment, appending certified meteorological records from the National Centers for Environmental Information for Chicago Palwaukee Airport, which was less than two miles from Suburban Surgical. The records stated that on January 16, a light freezing rain began at 5:07 a.m. and continued until 6:52 a.m. The freezing rain began again at 7:29 a.m. and lasted until at least 7:52 a.m. Defendant asserted in part that the scope of a snow removal contractor's duty of care is delineated by the terms of its contract with the property owner. The written contract between defendant and Suburban Surgical did not include a requirement to salt the parking lot in anticipation of an ice storm or freezing rain event. Also, there was no evidence that defendant was required to salt if there was no snow.

¶ 7    In her response, plaintiff asserted that Suburban Surgical expected defendant to salt the parking lot and it was defendant's custom and practice to do so. Plaintiff stated that in failing to salt, defendant disregarded a winter weather advisory warning for freezing rain, its contractual duties, safe custom and practice, and common sense. Plaintiff also stated that genuine issues of material fact existed as to whether defendant salted the parking lot earlier on the date of the incident. Plaintiff pointed to deposition testimony from Todd Pinkerman, a vice-president of Suburban Surgical, who stated that after plaintiff's fall, defendant's owner, president, and sole employee—Jorge Galvan[1]—told Pinkerman that he salted the parking lot earlier. In contrast, Galvan stated at his deposition that he did nothing to the parking lot that morning. Thus, there were genuine issues of material fact as to whether defendant salted the parking lot, whether it applied enough salt, whether it allowed the parking lot to freeze on some areas but not others, and whether it should have applied more salt to the area where plaintiff fell.

---

[1] Galvan's last name is also spelled "Galvin" in the record. We use the spelling on Galvan's affidavit, which we summarize in this order.

¶ 8    The record contains an affidavit from Galvan, who averred in part as follows. The contract with Suburban Surgical required defendant to remove snow when a certain amount of snow fell, which Galvan believed was one inch, though he may have plowed if there was less snow. According to the contract, when snow removal was required, Galvan would plow the parking lot and then salt as necessary. Suburban Surgical could also request more salt, which was billed per ton of salt applied. Galvan recalled that a winter storm was predicted for January 16. At approximately 4 a.m. that day, Galvan drove to Suburban Surgical and inspected the lot. He walked the entire lot and it did not have any snow or ice. The lot was completely clean and dry. Later that morning, rain began to fall, whereupon Todd Pinkerman from Suburban Surgical called and requested that Galvan salt the lot. Pinkerman told Galvan that it was raining, the rain was freezing, and someone had fallen.

¶ 9    In his deposition, Galvan stated, through an interpreter, that he was hired to remove snow and salt the parking lot. Galvan distributes salt after there is frozen water or snow. Galvan checks the weather on his phone and by watching the Weather Channel. However, he does not find either source to be accurate, which is "the reason why [he] cannot be accurate, either."

¶ 10    Galvan could not recall the weather conditions on January 16. He went to Suburban Surgical at 4 a.m. "because it was cold, and it might need salt." Upon arriving, Galvan observed that there was no ice in the parking lot and the parking lot was dry and clean. Galvan stayed for about half an hour. He walked around the entire parking lot, checked the exits and all areas, "and everything was perfect." Galvan added that "when the ground is in this condition, I cannot distribute salt." Galvan stated that it does not make sense to apply salt if there is no ice on a lot. Galvan left Suburban Surgical and went to a coffee shop. From there, Galvan rested in his truck and then went to a site in Palatine. A little bit of rain had started after Galvan left the coffee shop.

While Galvan was in Palatine, Todd Pinkerman called to request salt and inform Galvan that someone had fallen. At that point, Galvan was already on the way back to Suburban Surgical because "it was already kind of raining, like freezing water." Galvan told Pinkerman that he had stopped by Suburban Surgical at 4 a.m., and the parking lot had been completely clean. When Galvan arrived at the parking lot the second time, it was wet and he applied salt. Galvan observed ice in some areas of the parking lot.

¶ 11    The record also contains the depositions of Pinkerman, plaintiff, and plaintiff's controlled expert witness. We summarize each below.

¶ 12    Pinkerman testified in his deposition that defendant had been plowing, salting, and removing snow at Suburban Surgical for 8 or 10 years. Pinkerman expected defendant to "[p]low the snow. Shovel the sidewalks. I can't remember what the criteria was, if there's so much snowfall, they would plow and shovel. And then salt as necessary." Pinkerman thought that defendant would plow if there was around an inch of snow. Defendant was also supposed to salt the parking lots, and Pinkerman agreed that it was defendant's custom and practice to salt the parking lot if necessary. Further, Galvan was asked "to really use his discretion that if the parking lot was icy *** he knew when our business hours were. So that if he could get out there and when he plows, if it requires salting, salt it when he plows." When he entered into the contract, Pinkerman understood that defendant would salt the parking lot if icy conditions existed, which defendant had done as part of previous contracts. Pinkerman also occasionally called defendant to salt "when we've noticed that he's had to salt more than 1 or 2 times in a day, with some very bad weather." Asked if defendant was expected to salt if there was no snow, Pinkerman replied, "I guess I never thought about it that way. I don't know how to answer that."

¶ 13    Pinkerman further recalled that on January 16, he arrived at Suburban Surgical after plaintiff was on the ground. The parking lot was wet with some ice patches and it was hard to tell if the parking lot had been salted. Pinkerman drove plaintiff to the hospital. While plaintiff was in the car or immediately thereafter, Pinkerman called Galvan. During that conversation, Galvan told Pinkerman that "he salted it when he went by earlier." Pinkerman asked Galvan to salt the parking lot again.

¶ 14    In her deposition, plaintiff stated that her work hours at Suburban Surgical were weekdays from 8 a.m. to 5 p.m. On January 16, it was not raining or snowing when plaintiff left for work. She arrived at work around 7:30 or 7:35 a.m. and parked in the second handicapped spot from the main entrance. Plaintiff checked her phone and listened to music until approximately 7:55 a.m. Plaintiff then got out of her car, started walking, and slipped and fell. Plaintiff knew there was ice at that point because she was soaking wet. Other co-workers reacted to her fall, and eventually, Pinkerman arrived and salted the lot so that plaintiff could be assisted. Plaintiff recalled that the parking lot had been salted in the past, but was not salted on January 16.

¶ 15    Plaintiff's controlled expert witness, Jeremy Swenson, testified in his deposition that he worked for a snow and ice removal company and owned a consulting business. For plaintiff's case, Swenson relied on weather data in a report from a company called WeatherWorks, LLC. Swenson did not know the person who prepared the report or that person's experience with weather data, but he was familiar with WeatherWorks, which he described as a reputable weather company. Swenson had not seen the raw data on which the report was based. He stated that without the WeatherWorks report, he would have pulled his own weather information, but did not have to "because I have an excellent weather report from weather experts." Based on the National Weather Service and WeatherWorks report, there was a storm system in the northwest suburbs of Chicago

on January 16. Swenson believed that Galvan ignored a winter weather advisory issued for that day because if he had listened to it, he would have put down salt. Swenson noted that the winter weather advisory called for freezing rain and sleet, which would make conditions dangerous and parking lots essentially icy. According to Swenson, it is a common practice of the industry to pretreat a surface with deicer before there is any ice.

¶ 16    The aforementioned WeatherWorks report is in the record and stated that it was requested by plaintiff's counsel. The report summarized the weather conditions at Suburban Surgical's address on January 16, which it arrived at using information from weather observation stations at O'Hare Airport and Chicago Executive/Palwaukee Airport, as well as sites in Mount Prospect, Palatine, Buffalo Grove, and Riverwoods. The report further stated that light freezing rain and some sleet overspread Wheeling between 2:45 and 3:15 a.m. At 4 a.m., there was light freezing rain and sleet. A winter weather advisory for freezing rain went into effect at 5 a.m. The precipitation changed to all freezing rain between 5 and 5:30 a.m. Around 7:50 a.m., the weather was overcast with light freezing rain.

¶ 17    Swenson's report was an exhibit to his deposition and stated in part as follows. After reviewing the WeatherWorks report, Swenson believed it was more likely than not that the parking lot was icy on the morning of January 16. Further, a reasonable snow and ice contractor would have salted the parking lot at 4 a.m. based on the outside temperatures and the winter weather advisory. Swenson also stated that defendant should have applied deicer.

¶ 18    At the hearing on the summary judgment motion, plaintiff asserted in part that "this is a nonfeasance issue. [Defendant] didn't do anything." In its oral ruling, the court applied *Mickens v. CPS Chicago Parking, LLC*, 2019 IL App (1st) 180156, which stated that the scope of a snow removal contractor's duty is determined by the contractual obligation. The court determined that

the contract between defendant and Suburban Surgical required salting the parking lot and defendant was obligated "to remove or to salt when ice was present." However, there was nothing in the contract that required defendant to pretreat the parking lot. The court also noted that there was no eyewitness testimony that there was ice on the parking lot when defendant was there. The court further found that there was nothing to indicate that defendant knew there was ice before Pinkerman called him. The court granted defendant's motion for summary judgment.

¶ 19    Plaintiff timely appealed.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, plaintiff contends that summary judgment was improper because there were questions of fact about whether defendant breached its duty. According to plaintiff, Suburban Surgical and defendant agreed that it was up to defendant when and how to salt, or Pinkerman would request that defendant salt the parking lot. Plaintiff argues that defendant breached its duty when Galvan disregarded the winter weather advisory, ignored industry custom and practice, and did not return to the parking lot to salt. Plaintiff further asserts that if Galvan actually salted before the fall—as he told Pinkerman—then Galvan did not use due care in doing so.

¶ 22    Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). In determining whether there is a genuine issue of material fact, the pleadings, depositions, admissions, and affidavits are construed strictly against the movant and liberally in favor of the opponent. *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. Summary judgment should not be granted where the material facts are disputed, or where the material facts are undisputed and reasonable persons might draw different inferences from the undisputed facts. *Adams v. Northern*

*Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Summary judgment is a drastic means of disposing of litigation and should only be granted when the right of the moving party is clear and free from doubt. *Mashal*, 2012 IL 112341, ¶ 49. The party moving for summary judgment has the initial burden of proof, which can be met "either by affirmatively showing that some element of the case must be resolved in his favor or by establishing that there is an absence of evidence to support the nonmoving party's case." (Internal quotation marks omitted.) *Barrett v. FA Group, LLC*, 2017 IL App (1st) 170168, ¶ 26. We review appeals from summary judgment rulings *de novo*. *Adams*, 211 Ill. 2d at 43.

¶ 23    To succeed on a negligence claim, a plaintiff must prove a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury that proximately resulted from that breach. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 227 (1996). Whether a duty has been breached is a factual question for the trier of fact, but whether a duty exists is a question of law. *Frederick v. Professional Truck Driver Training School, Inc.*, 328 Ill. App. 3d 472, 476 (2002). "[W]here no duty exists, summary judgment is proper because there is no possible recovery for [the] plaintiff as a matter of law." *Id.*

¶ 24    This case concerns the liability of a snow and ice removal contractor for a plaintiff's injuries after slipping on ice. Section 324A of the Restatement (Second) of Torts (1965) provides that contracts between a landowner and a contractor may impose a duty of care on the contractor to third parties. See *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 210 (1979) (adopting section 324A of the Restatement (Second) of Torts). Section 324A states:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person

or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

a) his failure to exercise reasonable care increases the risk of such harm, or

b) he has undertaken to perform a duty owed by the other to the third person, or

c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts § 324A (1965).

This court has applied section 324A to snow and ice removal contracts because those contracts are for the protection of third parties coming onto the landowner's property. *Mickens*, 2019 IL App (1st) 180156, ¶ 61.

¶ 25    Where a voluntary promise to render services is based on a contract, the scope of the voluntarily assumed duty is defined by the contractual promise. *Id*. ¶ 95. Identifying the voluntarily assumed duty is critical, as it is that duty that the contractor must exercise with reasonable care. *Id*. ¶ 121. See also *Eichengreen v. Rollins*, 325 Ill. App. 3d 517, 525 (2001) (where allegation of negligence is based on a contractual obligation, the scope of the duty is determined by the contract terms).

¶ 26    Thus, we must examine the snow and ice removal contract to identify the duty that defendant assumed. The parties agree that the contract required defendant to salt the parking lot, but the written contract does not spell out the specific circumstances that trigger salting. Plaintiff seems to suggest that defendant had a duty to pre-emptively salt based on weather predictions. Defendant maintains that it only had to salt if there was a snow event and that it was given full discretion to decide whether or not to salt the parking lot.

¶ 27    In construing a contract, a court should ascertain the intent of the parties and give effect to that intent. *Id*. at 521. "When a contract is ambiguous or silent on a disputed issue, a court may, in

order to determine the intent of the parties at the time of contracting, consider the contemporaneous or subsequent acts of the parties to the contract." (Internal quotation marks omitted.) *Szafranski v. Dunston*, 2015 IL App (1st) 122975-B, ¶ 75. In his deposition, Galvan stated that he checks the weather on his phone and watches the Weather Channel. He also stated he distributes salt after there is frozen water or snow. Pinkerman stated at his deposition that Galvan was asked to use his discretion "that if the parking lot was icy *** he knew when our business hours were," but also stated that Galvan was expected to salt when he plowed snow. Significantly, on the day of the incident, Galvan went to the parking lot at 4 a.m. "because it was cold, and it might need salt." Galvan was there to check for ice. He made no mention of snow and there is no evidence that snow fell that day. Based on the materials in the record, the contract required defendant to use his discretion and apply salt if icy conditions existed, and upon request. There is no evidence that weather advisories for freezing rain or other conditions triggered an obligation to pre-emptively salt. To read in such a requirement would impermissibly expand defendant's duty beyond the scope of the contract. See *Eichengreen*, 325 Ill. App. 3d at 525 (a defendant's duties will not be expanded beyond the scope of the duties required by the contract).

¶ 28    With the scope of defendant's duty in mind, we next review what defendant actually did on the day of the incident. Per Galvan's deposition testimony, he went to the parking lot at 4 a.m., checked the parking lot, and observed that it was dry and clean. He stated that he could not distribute salt "when the ground is in this condition," and that it does not make sense to apply salt if there is no ice on a lot. Galvan left Suburban Surgical. Later, at Pinkerman's request, Galvan returned to the parking lot and applied salt. This time, he observed small patches of ice and noted that freezing rain had started. Defendant did not breach the duty set out in the snow and ice removal contract. Applying his discretion, Galvan decided not to salt at 4 a.m. because he did not observe

any ice during his thorough check of the parking lot. Upon request, he returned to the parking lot and applied salt. Further, Galvan stated in his deposition that he was already on the way when Pinkerman called because precipitation had started. Galvan did exactly what was called for in the contract.

¶ 29     Plaintiff asserts that there was evidence that the parking lot was indeed icy at 4 a.m., pointing to her expert's testimony that there was ice in the lot and it needed to be salted. Plaintiff's expert relied on the WeatherWorks report in forming his opinion, which plaintiff contends was permissible under *Wilson v. Clark*, 84 Ill. 2d 186 (1981). In *Wilson*, our supreme court adopted Federal Rule of Evidence 703, which allows experts to give opinions based on facts not admissible in evidence, as long as the facts relied on are " 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.' " *Id*. at 193 (quoting Fed. R. Evid. 703). If so, the expert can reveal the facts not as substantive evidence, but for the limited purpose of explaining his opinion. *Rios v. City of Chicago*, 331 Ill. App. 3d 763, 770-71 (2002).

¶ 30     The problem for plaintiff is that *Wilson* " 'has no relevance to summary judgment procedure.' " *Robidoux v. Oliphant*, 201 Ill. 2d 324, 334 (2002) (quoting *Kosten v. St. Anne's Hospital*, 132 Ill. App. 3d 1073, 1080 (1985) (explaining why *Wilson* does not apply to affidavits under Illinois Supreme Court Rule 191(a) in support of or in opposition to motions for summary judgment)). *Wilson* addresses an expert's testimony at trial. *Id*. In summary judgment proceedings, the circuit court "may not consider evidence or testimony that would not be admissible at trial." *Garland v. Sybaris Clubs International, Inc.*, 2019 IL App (1st) 180682, ¶ 37. Plaintiff has not explained how the report would be admissible at trial. Even in the trial setting, for an expert to give an opinion based on facts not admissible in evidence, "there must be some showing that the basis for an expert's testimony is reliable." *Promisco v. Dart*, 2012 IL App (1st) 112655, ¶ 16. See

also *Rios*, 331 Ill. App. 3d at 771 (it was error to allow expert to rely on and disclose certain statements where no foundation was laid as to whether such hearsay is customarily relied on in rendering opinions in the expert's field and whether such reliance was reasonable). Here, plaintiff makes no attempt—other than the expert's own testimony that the WeatherWorks report was "excellent"—to show that the data in the report is customarily relied on and that such reliance is reasonable. For those reasons, the WeatherWorks report and Swenson's reliance on it cannot be considered in the present summary judgment proceedings.

¶ 31 Plaintiff further posits that there is a genuine issue of material fact about whether defendant actually salted the lot, but did so negligently. In support of this theory, plaintiff relies on Pinkerman's deposition testimony that Galvan told him that he had salted the parking lot earlier. Plaintiff questions why Galvan told Pinkerman he had salted if there had not been ice in the parking lot.

¶ 32 Defendant asserts that plaintiff forfeited this argument because plaintiff did not raise the negligent salting theory in the circuit court. Defendant notes that at the summary judgment hearing, plaintiff contended that defendant never salted. Although "[i]t is axiomatic that an unsuccessful party may not advance a new theory of recovery on appeal" (*Trilisky v. City of Chicago*, 2019 IL App (1st) 182189, ¶ 47), plaintiff raised the negligent salting theory in the circuit court. Plaintiff's complaint included allegations that defendant failed to exercise ordinary care in the removal of ice from the parking lot and failed to spread or apply salt in an appropriate fashion. See *Crane v. Triangle Plaza, Inc.*, 228 Ill. App. 3d 325, 329 (1992) (theory was not forfeited where complaint contained the theory raised on appeal). Further, plaintiff's written response to the motion for summary judgment stated that there were genuine issues of material fact as to whether defendant

salted the parking lot earlier on January 16, referring to Pinkerman's deposition testimony. Plaintiff did not forfeit the theory that defendant negligently salted the parking lot.

¶ 33    Still, plaintiff has not presented any evidence of negligent salting. Plaintiff relies on Pinkerman's statement that Galvan claimed to have "salted it when he went by earlier." To extrapolate that statement to mean that Galvan salted negligently strikes this court as speculative, which is not enough to raise a genuine issue of material fact. See *Frederick*, 328 Ill. App. 3d at 477. Further, when a contract is silent as to the extent of a duty, the duty extends to at least performing in a nonnegligent manner, where negligence is defined as "the omission to do something which a reasonable man would do, or the doing of something which a reasonable and prudent man would not." (Internal quotation marks omitted.) *Crane*, 228 Ill. App. 3d at 329. Plaintiff presents no evidence about how Galvan salted at 4 a.m., if at all, and there was no evidence that Galvan salted in an unreasonable manner. There is no genuine issue of material fact about whether Galvan negligently salted the parking lot.

¶ 34    Under the contract, Galvan was to use his discretion and apply salt if icy conditions existed, and upon request. There is no genuine issue of material fact that defendant abided by that duty and there is no evidence that defendant failed to perform its duty with reasonable care. Summary judgment was properly granted to defendant.

¶ 35                                    III. CONCLUSION

¶ 36    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 37    Affirmed.